# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## OCTOBER 1997 SESSION



**FILED**

**November 5, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| Appellee, | ) C.C.A. No. 02C01-9604-CR-00119 |
| | ) |
| | ) Shelby County |
| V. | ) |
| | ) Honorable W. Fred Axley, Judge |
| **ANDREW R. EWING,** | ) |
| | ) (Felony Murder) |
| Appellant. | ) |
| | ) |

FOR THE APPELLANT:

A C Wharton
Shelby County Public Defender

Edward G. Thompson
Assistant Public Defender
616 Adams Avenue
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Kenneth W. Rucker
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-4351

William L. Gibbons
District Attorney General

Edgar A. Peterson, IV
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

The appellant, Andrew R. Ewing, and his co-defendant, Derrick C. Brooks, were tried jointly by a jury for first degree murder. Ewing and Brooks were found guilty of felony murder for committing a murder during the perpetration of an aggravated burglary. Both men were sentenced to life in prison. Because Derrick C. Brooks' appeal has been severed from Andrew R. Ewing's appeal, we will address only the issues presented by Andrew Ewing in this opinion.

Andrew Ewing raises the following three issues on appeal: (1) whether the evidence is sufficient to support his conviction for murder in the perpetration of an aggravated burglary; (2) whether the touching by the prosecutor of the victim's mother's arm during her testimony rose to the level of prosecutorial indiscretion; and (3) whether the prosecutor's closing argument was improper. After carefully reviewing the record, we affirm the trial court's judgment.

Approximately three or four weeks before March 20, 1994, the day of the shooting, Andrew Ewing and Willie Fifer had an altercation at Fifer's house on 3559 Clayphil in Memphis over Fifer's sister, Yolanda. Yolanda and Andrew Ewing had two children together. On this particular morning, Yolanda had asked her brothers, Willie and James, to take her son to school in her car. Unbeknownst to the two brothers, Andrew Ewing had hidden in the back seat of the car. While riding around, the Fifer brothers had discussed the problems between their sister and Andrew Ewing, and Ewing had overheard this conversation. When the Fifer brothers returned to their home on 3559 Clayphil, Ewing jumped out of the car, and he and Yolanda began to argue. Willie Fifer tried to get the two to leave, but Ewing broke the back window of Yolanda Fifer's car. Willie and his brother, James, chased Ewing until they caught him at a grocery store. Willie and Marlo Terry tried to settle the argument, but James Fifer grabbed Ewing by the throat. The altercation ended, and James and Willie

Fifer, along with Marlo Terry, returned to their home at 3559 Clayphil.

Within a few minutes of this altercation, Willie Fifer drove the car toward Andrew Ewing's father's house. Fifer had planned to get Ewing's father to repair his car. As Willie Fifer was driving down a street, Ewing ran into the middle of the street and pushed a garbage can into Fifer's car. The Fifer brothers chased Ewing into a store and began fighting him. Ewing ran out of the store to a market, but the doors of the market were already locked. The altercation then ended.

On the night of the shooting, March 20, 1994, Andrew Ewing's girlfriend, Teresa Landers, and her two children arrived at Ewing's place of employment, an Exxon gas station, at approximately 10 p.m. She and her two children were asleep on the floor when Joe Lurry, Ewing's uncle, came into the gas station around 2 a.m. Ewing told Landers that he needed to see about something and then left Landers in charge of the gas station.

Because Joe Lurry had been drinking, Ewing drove Lurry's car, and after driving around for awhile, Ewing stopped the car. In approximately two to three minutes, Derrick Brooks got into the car. After an unsuccessful attempt to buy beer, Ewing drove the car "onto a dead end street and stated, 'there the house is right there.'" Ewing parked the car about a block past the house. Ewing and Brooks got out of the car and started walking toward the house. Lurry, who decided to see what was happening, approached the house and saw Ewing, holding a stick in his hand, kick the front door of the house three to five times.

Inside the house at 3559 Clayphil were Marlo Terry; Keisha Taylor, his girlfriend; and Willie Fifer. Marlo Terry and Keisha Taylor were in the back bedroom, and Willie Fifer was on the couch in the living room. Fifer had begun to fall asleep when he heard someone kicking the front door of the duplex. He

ran down the hallway, beat on Terry's bedroom door, and begged Terry to let him in the room. Someone hit Fifer from behind in the head, and he fell to the ground. When he rolled over he made eye contact with Andrew Ewing. Although Fifer saw another man in his house, he could not identify the other man. Ewing hit Fifer three to four times, as Fifer continued begging Terry to let him into the bedroom. Terry finally let Fifer into the bedroom, and Terry stood with his back against the door trying to keep the men from entering the bedroom. Meanwhile, Fifer, who crawled under the bed, told Keisha Taylor that one of the men was Andrew Ewing. Taylor heard loud shots, and Terry fell to the floor.

Because the house did not have a telephone, Taylor had to go next door for help. Fifer stayed at the house with Terry until he died, and then he went next door as well. The next door neighbor finally answered the door and called the police. After the shots were fired, Ewing, Brooks, and Lurry left. Lurry asked Ewing what happened, and Ewing answered, "That's all right, man. We got this." Ewing drove Brooks to his house and then drove Lurry back to the Exxon station, arriving there around 4 a.m. Lurry told Teresa Landers, Ewing's girlfriend, that someone had been shot and then he left. Ewing told her that he had kicked the door down and had started fighting with Peanut, the nickname for Willie Fifer. Ewing also told Landers that he followed Fifer toward the bedroom and that Derrick Brooks shot into the bedroom through the door. Ewing further stated that he heard someone in the bedroom say that they had been hit.

The next day Ewing called his girlfriend, Teresa Landers, and asked her to lie about the times that she visited the gas station. He wanted her to say that she had left the gas station between 12:00 and 1:00 a.m.

On March 22, 1994, Derrick Brooks, after having been advised of his rights, stated that he entered the residence at 3559 Clayphil with Andrew Ewing

and Joe Lurry. He further stated that they entered the house by knocking down the door. He also stated that he shot a gun four times inside the house because he thought that somebody was going to get a gun and shoot him. Dr. Jerry Francisco, the Shelby County medical examiner, testified that the cause of Marlo Terry's death was a gunshot wound to the back.

In his first issue, the appellant argues that the evidence is insufficient to support his felony murder conviction. He contends that there is no evidence that he knew his co-defendant had a pistol and there is no evidence of where he was when his co-defendant fired the gun. Furthermore, he maintains that there is no evidence that he knew the victim or had any animosity toward him.

The state argues that the evidence is sufficient to support Ewing's felony murder conviction. The state contends that Ewing called Derrick Brooks and told him to go with him. Ewing, who then left his place of employment, drove the car, with Derrick Brooks and Joe Lurry as passengers, to the address of Marlo Terry, the victim. Ewing along with Brooks got out of the car and walked to the front of the duplex. After grabbing a stick to use as a weapon, Ewing kicked the front door several times until it opened. Ewing then entered the house, chased Willie Fifer, and repeatedly hit Fifer in the head with a stick. The state maintains that although Ewing did not fire the gun that killed Marlo Terry, Ewing is criminally responsible for the conduct of Derrick Brooks.

Great weight is accorded jury verdicts in criminal trials. Jury verdicts accredit the state's witnesses and resolve all evidentiary conflicts in the state's favor. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Banes, 874 S.W.2d 73, 78 (Tenn. Crim. App. 1993). On appeal, the state is entitled to both the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). Moreover, guilty verdicts remove the presumption of innocence, enjoyed by

defendants at trial, and replace it with a presumption of guilt. State v. Grace, 493 S.W.2d 474 (Tenn. 1973). Appellants, therefore, carry the burden of overcoming a presumption of guilt when appealing jury convictions. Id.

When appellants challenge the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e); State v. Duncan, 698 S.W.2d 63 (Tenn. 1985). The weight and credibility of a witness' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978).

Evidence of the appellant's guilt is overwhelming. Apparently it was the appellant's idea to go to Willie Fifer's house that night, and he recruited Derrick Brooks' help. The appellant drove the car to the house, and once there, he kicked the door down and began beating Willie Fifer. At trial, Fifer identified the appellant as the person who attacked him the night of the shooting. Although the appellant did not shoot the gun that killed Marlo Terry, he is criminally responsible for the conduct of Derrick Brooks under Tenn. Code Ann. § 39-11-402 (1991). The evidence is sufficient to support the appellant's conviction for felony murder. This issue is without merit.

In his second issue, the appellant argues that the touching by the prosecutor of the victim's mother's arm during her testimony was prosecutorial indiscretion. The prosecutor showed Eddie Mae Parker, the victim's mother, a picture of her son taken by the Shelby County Medical Examiner. During the testimony of Ms. Parker, the prosecutor touched Ms. Parker's arm to steady her. The appellant maintains that the prosecutor was only trying "to elicit sympathy from the jury" and that this act by the prosecutor prejudiced his case.

The state, however, argues that the prosecutor's actions were not improper. The state asserts that the prosecutor approached the witness with the permission of the court and showed her a picture of her dead son for identification. The witness became upset, so the prosecutor touched the witness "in an attempt to calm her and to prevent her from falling out of the chair." The appellant's attorney did not request a mistrial or a curative instruction, but requested only a bench conference to express disapproval of the prosecutor's actions. After this bench conference, the prosecutor did not have any further physical contact with the witness. The state maintains that if there was error, it was harmless.

The appellant's attorney expressed only disapproval of the prosecutor's action in a bench conference, but now argues that this act by the prosecutor prejudiced his case. However, as the state notes, the appellant did not request a mistrial or a curative instruction in response to the prosecutor's action. Because the appellant did not take action "to prevent or nullify the harmful effect of an error" pursuant to Rule 36(a) of the Tennessee Rules of Appellate Procedure, he is not entitled to relief now. This issue is without merit.

In his third issue, the appellant asserts that the prosecutor made improper remarks during his closing argument that inflamed the jury. First, the appellant argues that the prosecutor's description of the autopsy of the victim as "slic[ing] him open like the piece of meat that these guys made him" was prejudicial because it encouraged "sympathy for the deceased and prejudice against the defendant." The appellant also contends that the prosecutor injected extraneous issues into the case by quoting from a 1992 speech by Memphis Mayor W. W. Herenton, "regarding the need to stop homicide among the minority populations."

Regarding the prosecutor's statement about the autopsy of the victim, the

state argues that the statement only "focused the jury on the reality of this man's death and was a fair comment of the evidence presented at trial." Also, the state contends that the issue of the prosecutor quoting from a 1992 speech of Mayor Herenton is waived because the appellant failed to cite to the record, failed to make a contemporaneous objection at trial, and failed to raise this incident as prosecutorial misconduct in his motion for new trial.

First, it is necessary to determine whether the statements made by the prosecutor were improper, and if so, "whether the improper conduct could have affected the verdict to the prejudice of the defendant." Harrington v. State, 385 S.W.2d 758 (Tenn. 1965). Five factors are considered in determining whether the improper conduct could have affected the verdict: (1) the conduct viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

The victim was a young, twenty-one-year-old man who was shot in his home by intruders in the middle of the night. We agree with the state that the prosecutor's statement about the autopsy of the victim emphasized to the jurors the finality of this young person's death, albeit in graphic terms. However, the prosecutor's statement was not improper. The appellant's issue regarding the prosecutor's quote from a speech by Mayor Herenton is waived.

We have discovered that the court entered the felony murder judgment as murder during the perpetration of a robbery, not aggravated burglary. Therefore, we respectfully remand to the trial court for entry of the proper judgment reflecting the offense returned by the jury's verdict.

The judgment of felony murder is affirmed, and the case is remanded with

instructions consistent with this opinion.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
DAVID G. HAYES, Judge