# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 9, 2004 Session

## STATE OF TENNESSEE v. MARCO POLO PATTEN

**Direct Appeal from the Criminal Court for Wilson County**
**No. 01-0010     J. O. Bond, Judge**

---

**No. M2003-00760-CCA-R3-CD - Filed April 29, 2004**

---

The Defendant, Marco Polo Patten, was convicted by a jury of aggravated sexual battery, a Class B felony. After a sentencing hearing, the trial court imposed a sentence of ten years in the Department of Correction. In this direct appeal, the Defendant raises the following issues: 1) whether the trial court erred by allowing evidence of prior bad acts by the Defendant; 2) whether the evidence is legally sufficient to support the jury's verdict; 3) whether the prosecutor made improper statements during his opening and closing statements; 4) whether cumulative errors prevented a fair trial; 5) whether the trial court imposed an excessive sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA McGEE OGLE, JJ., joined.

William Cather, Assistant Public Defender, Lebanon, Tennessee, and Merrilyn Feirman, Nashville, Tennessee, for the appellant, Marco Polo Patten.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Tom P. Thompson, District Attorney General; and Robert N. Hibbett, Assistant District Attorney General, for the appellant, Marco Polo Patten.

## OPINION

Eleven-year-old J.T.[1] testified that the Defendant was her mother's live-in boyfriend. J.T. testified that sometimes, when she was with the Defendant in his woodworking shop, he would ask her "if he could tickle [her] and if he could -- if [she]'d take off her clothes for him and he'd give [her] money." J.T. told him no. J.T. testified that the Defendant asked this of her "over and over." In her words, "[H]e asked me over and over the same question, if I would take off my clothes in front

---

[1]It is the policy of this Court to identify minor victims of sexual crimes by their initials.

of him or if he could tickle me or my butt and on my stomach and everywhere, anywhere, like my private, and I don't like that. And I said no."

On November 25, 2000, when J.T. was nine years old, she was at home alone with the Defendant while her mother was at work. She was wearing a bathing suit with a long t-shirt over it. She went into her mother's room to lay on the bed and watch television, and the Defendant came in the room. He laid on the bed and got out a roll of electrical tape. When J.T. asked him what he was doing, he "said to be quiet and let him do what he want[ed] to." He then "tied [her] hands to [her] feet with [her] legs all the way spread open." He began tickling her and "poking at [her] private" with his finger. When the court asked J.T. what she meant by her "private," she answered, "It's something that's not for anyone to bother but me to use the bathroom and for nobody to touch." She said that she thought the Defendant was playing until he started poking her, at which point she yelled for him to stop. She said that he was tickling her on her stomach, but he "got closer" until he ultimately touched her "private" with his finger. When she yelled for him to stop, he did. However, he told her "not to tell anyone because he didn't want to break up with [her] mom."

A few days after the incident, Ms. Taylor was moving her bed, and she found a wad of black electrical tape. She told J.T. to throw it away, and J.T. asked whether she would like to know how it came to be there. J.T. then told her mother what the Defendant had done to her. After talking to J.T., Ms. Taylor put all the Defendant's belongings outside her house. After the Defendant was arrested, Ms. Taylor went to see him in jail. She testified that he admitted to taping J.T. up, but he did not admit to touching her in an inappropriate way.

Detective Sharon Costley of the Lebanon Police Department investigated the assault on J.T. After having the Defendant read and sign a rights waiver form, she took a statement from him. In his statement, the Defendant admitted that he frequently played with J.T. by tickling her, but he specifically denied taping her up. He stated that he loved J.T. and would not hurt her.

The defense called Jerry Smith, the pastor of the church that the Defendant and Ms. Taylor's family attended. In addition to going to church with the Defendant, Mr. Smith also employed the Defendant in his woodworking business. He testified that Ms. Taylor enjoys a reputation of untruthfulness in her community. Based on this evidence, the jury convicted the Defendant of the aggravated sexual battery of J.T.

The first issue raised by the Defendant on appeal is whether the trial court erred by admitting evidence of the Defendant's prior conduct with J.T. The evidence to which the Defendant refers is the testimony of J.T. that sometimes, while she was with the Defendant in his woodworking shop, he would ask "if he could tickle [her]" and "if [she]'d take off her clothes for him and he'd give [her] money." J.T. testified that he asked her "over and over the same question, if [she] would take off [her] clothes in front of him or if he could tickle [her] on [her] butt and on [her] stomach and everywhere, anywhere, like [her] private . . . ." The Defendant argues that this evidence constitutes prior bad acts under Tennessee Rule of Evidence 404(b), and should have been excluded because the probative value of the evidence was outweighed by the risk of unfair prejudice.

-2-

Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Although the rule specifically precludes the admission of prior bad acts to establish the character of a person, it also states that evidence of prior bad acts may "be admissible for other purposes," which this Court has held to include motive, intent, guilty knowledge, identity, absence of mistake or accident, and a common scheme or plan. See State v. Raymond Griffin, No. W2001-01332-CCA-R3-CD, 2002 WL 1482689, at *7 (Tenn. Crim. App., Jackson, Mar. 15, 2002).

In this case, the trial judge determined that the evidence of the Defendant's prior conduct with the victim was not being used to show conduct conforming with a character trait, but was instead being used to establish that the Defendant "planned and designed his activities." In the State's opening statement, the prosecutor asserted that the Defendant "had tried to groom [J.T.] for sexual activities." As the trial court acknowledged, the State's theory was that the Defendant's prior conduct with J.T. showed that the assault was intentional, not accidental.

As we have noted, evidence of prior bad acts may be admissible to prove intent or lack of mistake or accident. That the Defendant acted intentionally is one of the elements of aggravated sexual battery. See Tenn. Code Ann. §§ 39-13-504(a), 501(6). We also believe that the evidence was relative to the issue of whether the Defendant's subsequent touching of the victim could be reasonably construed as done for the purpose of sexual arousal or gratification. See Tenn. Code Ann. § 39-13-501(6). Therefore, a material issue did exist other than conduct conforming with a character trait. See Tenn. R. Evid. 404(b)(2). Furthermore, although the trial court did not explicitly state on the record that the probative value of the evidence outweighed the danger of unfair prejudice, we conclude that it did. See Tenn. R. Evid. 404(b)(3). The evidence showed that the Defendant's assault was intentional, not accidental; therefore, its probative value was high. The risk of unfair prejudice was not particularly high because the State did not pursue any line of questioning or argument that would imply that the Defendant had a propensity or disposition to commit the crime, nor was there any indication that the jury convicted the Defendant based on his prior bad acts as

opposed to the sexual battery of J.T. Accordingly, the trial court did not err by admitting the evidence of the Defendant's prior conduct with J.T., and this issue is without merit.[2]

The Defendant's next issue is whether the evidence was legally sufficient to support his conviction for aggravated sexual battery. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Our criminal code defines the crime of aggravated sexual battery as "unlawful sexual contact with a victim by the defendant" where "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6). The Defendant does not contest that J.T. was less than thirteen years old at the time of the crime. Rather, he asserts that the State failed to prove that he intentionally touched J.T. for the purpose of sexual arousal or gratification.

J.T. testified that, on November 25, 2000, the Defendant taped her hands and feet so that her legs were spread. The Defendant said he wanted to "tickle" her, and he began tickling her stomach.

_____

[2]Tennessee Rule of Evidence 404(b) also requires the trial court to hold a jury-out hearing upon request before evidence of prior bad acts may be admitted. However, because the Defendant did not request such a hearing, it was not error for the trial court to not hold a hearing outside the jury's presence. See Tenn. R. Evid. 404(b)(1).

However, he ultimately began "poking" at her "private," or her vagina, with his finger. When J.T. yelled for him to stop, he did, but he told her not to tell anyone because he did not want to break up with J.T.'s mother. Furthermore, the jury heard that the Defendant had asked J.T. to undress in front of him on prior occasions and that he would pay her to do so. Based on the evidence that the Defendant bound the victim with her legs spread apart, poked her vagina with his finger, and told her not to tell, the jury was entitled to find that he acted intentionally.

This same evidence also supports the jury's finding that the touching was for the Defendant's sexual arousal or gratification. In light of the facts that the Defendant had repeatedly asked J.T. to take off her clothes for him and that he taped her with her legs spread, it was reasonable for the jury to conclude that he touched her vagina with his finger for his own sexual arousal or gratification. This issue is without merit.

Next, the Defendant argues that the prosecutor made improper statements during his opening statement and closing argument. The Defendant contends that in his opening statement, the prosecutor misstated the elements of aggravated sexual battery. Specifically, the prosecutor told the jury,

> Now, what we have to prove today, Ladies and Gentlemen of the Jury, is this. To prove aggravated sexual battery we have to prove that he had unlawful sexual contact with a victim by a defendant and the victim is less than thirteen years of age. That's it. That's what we have to prove.

The Defendant complains that the prosecutor misrepresented the law by failing to tell the jury that the Defendant must have intentionally touched the victim.

Initially, we note that the prosecutor correctly stated the definition of aggravated sexual battery. See Tenn. Code Ann. § 39-13-504(a)(4). Apparently, the Defendant's concern is that the prosecutor failed to recite the definition of "sexual contact," which involves the intentional touching of a victim that can be "reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6). The prosecutor was not required to define sexual contact for the jury; therefore, he committed no error by not mentioning that sexual contact necessarily entails an intentional touching. Furthermore, any confusion caused by the prosecutor's opening statement was first cured when the prosecutor emphasized in his closing argument that he was required to prove that the Defendant intentionally touched the victim. Second, the trial court's charge to the jury would have remedied any confusion because the court specifically stated that for them to convict the Defendant of aggravated sexual battery, the State was required to prove beyond a reasonable doubt that "[t]he Defendant had unlawful sexual contact with the alleged victim in which the Defendant intentionally touched the alleged victim's intimate parts" and that the victim was under thirteen years old. Accordingly, this portion of the Defendant's argument is without merit.

The Defendant also maintains that the prosecutor made an improper statement during his closing argument. The prosecutor stated,

Is [J.T.] telling the truth or is she lying. If you acquit him, that means you think she's lying. If you believe [J.T.], then you must find him guilty. The only thing it takes, the only thing it takes for evil to prevail is for good people to do nothing. And the state of Tennessee is asking you to do something.

The Defendant asserts that the prosecutor's statement regarding evil prevailing when good people do nothing was improper and entitles him to a reversal.

Attorneys are generally given wide latitude in the scope of their closing arguments, and trial judges enjoy substantial discretionary authority in determining the propriety of those arguments. See State v. Reid, 91 S.W.3d 247, 298 (Tenn. 2002). However, "arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." Id. To justify a reversal on the ground of improper argument, it must affirmatively appear that the misconduct had a prejudicial effect on the jury's verdict. See id.

The factors to aid us in making this determination are set forth in State v. Judge, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). The Judge factors, later adopted by our supreme court in State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984), require us to consider the following:

1. The conduct complained of[,] viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

Judge, 539 S.W.2d at 344.

In light of the facts and circumstances of the case, the prosecutor's comment was a plea for the jury to evaluate the evidence, and if they believed J.T., to find the Defendant guilty of aggravated sexual battery. Although the attorney for the Defendant objected at the end of the State's argument, no curative instruction was asked for or given. The prosecutor apparently intended to remind the jury of their duty to see that justice was done. Finally, given the strength of the State's case and the absence of other errors in the record, we believe that the prosecutor's comment had little, if any, effect on the jury.

In State v. Thomas Dee Huskey, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059, at *133 (Tenn. Crim. App., Knoxville, June 28, 2002), this Court considered a similar comment by a prosecutor made during his closing argument. He stated, "It reminds me of Sir Edmond Burke, a great Englishman, said, 'The necessity of evil to prevail is for good people not to come forward.'" Id. In that case, a panel of this Court noted that "in its context and on its face, this argument was proper rhetoric." Id. However, the court expressed concern over the propriety of using the quote, explaining that the concern arose as a result of the prosecutor twice referring to the defendant as

"evil." Id. Ultimately, the court found that the prosecutor's comment did not affect the verdict to the defendant's prejudice. Id. However, in contrast to the instant case, the prosecutor in Huskey was explaining the importance of witnesses coming forward, not the duty of the jury to do justice.

Notwithstanding this distinction, we do not believe the prosecutor's statement in this case was improper. It appears that he was simply attempting to convey to the jury the importance of their finding the Defendant guilty if they believed that he committed aggravated sexual battery. Even if the statement were improper, the Defendant is not entitled to a reversal because it does not appear to have had a prejudicial effect on the jury's verdict. This issue is without merit.

Next, the Defendant argues that he is entitled to a new trial because the cumulative effect of the errors in this case effectively deprived him of his right to a fair trial. Having found no errors, we conclude that this issue is without merit.

Finally, the Defendant contends that the trial court imposed an excessive sentence. Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904 app. at 926-27 (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

Betty Jakalski testified at the sentencing hearing that she was the probation officer who prepared the presentence report in this case. The report shows that, at the time of sentencing, the Defendant was thirty-four years old and separated from his spouse. The Defendant dropped out of high school after the ninth grade and worked primarily for Jerry Smith in his woodworking business. The only prior criminal history listed in the report was a 1987 conviction for theft.

Jerry Smith, the Defendant's pastor and employer, testified that if the Defendant were to receive an alternative sentence, he could stay with him and work in his shop. He also testified that he believed the Defendant would comply with the conditions of an alternative sentence.

"Aggravated sexual battery is a Class B felony." Tenn. Code Ann. § 39-13-504(b). The trial court determined the Defendant to be a Range I offender, see id. § 40-35-105, and as such, the Defendant was subject to a potential sentence of eight to twelve years. See id. § 40-35-112(a)(2). The presumptive sentence for a Class B felony is the minimum sentence in the range, see id. § 40-35-210(c), and may be enhanced or reduced based on the existence of applicable enhancement and mitigating factors, see id. § 40-35-210(d), (e).

In this case, the trial court enhanced the Defendant's sentence from the presumptive sentence of eight years to ten years based on two enhancement factors: 1) the Defendant had a history of criminal convictions in addition to those necessary to establish him as a Range I offender; and 2) he abused a position of private trust. See id. § 40-35-114(2), (16). The court found no mitigating factors, and the Defendant does not contend that any apply. Furthermore, the Defendant does not contest the applicability of enhancement factor sixteen. However, he argues that the trial court should not have given "significant weight" to enhancement factor two because his only conviction was in 1987. We initially note that there is no time limit beyond which a conviction may not be used to enhance a sentence under factor two. Furthermore, we conclude that the Defendant's abuse of the position of private trust that he enjoyed with respect to J.T. would, by itself, justify an enhancement of his sentence by two years. Therefore, this issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-8-