Kenneth JUDGE, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

March 19, 1976.

Bernard K. Smith, McMinnville, Joe S. Bean, Winchester, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, for defendant in error.

DAUGHTREY, Judge.

## OPINION

The defendant, Kenneth Judge, was convicted of second degree burglary, and was sentenced by the jury to not less than three nor more than 15 years in the penitentiary. He appeals his conviction, setting out multiple assignments of error which present four issues to be resolved by this Court.

The defendant alleges (1) that the evidence preponderates against the verdict; (2) that the trial court erred in failing to charge the jury on the lesser included offense of attempt to commit a felony; (3) that the trial judge likewise erred in failing to instruct the jury that they were the judges of the law as well as of the facts of the case; and (4) that the prosecutor made improper statements during argument which constitute reversible error. For the reasons stated below in connection with the last issue, we agree that prejudicial error has occurred and that the judgment must be reversed and the case remanded for a new trial.

The evidence at trial was that the home of Paula and Edward Porter in McMinnville, Tennessee, was burglarized on April 6, 1973, at approximately noon. Paula Porter, the State's chief witness, had returned to the house to find an unfamiliar car parked in the driveway. She entered the house and was attempting to telephone her husband when she heard the front door slam. At that time Mrs. Porter saw a man, presumably the intruder, rush past the window with something in his arms which looked to her like clothing. She went to the back door and saw him getting into the car with the clothes, and at this point he looked at her and said, "Sorry, Ma'am, wrong house." As the car was being driven away Mrs. Porter saw a garment sleeve trailing out of the car which looked "familiar" to her. She testified that she later found over $200.00 worth of her personal clothing missing from her bedroom, which had been ransacked. According to her husband's testimony, the clothing reappeared the next day, April 7, 1973, in a box left on the front porch of the Porter home by someone unknown. Mrs. Porter was able to identify the clothing as hers, but was unable to swear that everything taken had been returned because some of the items stolen were miscellaneous undergarments.

At the time the car pulled away, Mrs. Porter noted its color and memorized the license plate number, which she wrote down on a piece of paper some five minutes later at a neighbor's house. This paper was misplaced and played no part in the trial of the case. Mrs. Porter testified she gave the number to the investigating police officer from memory rather than from the writing, and she again recited the number at trial, purportedly from memory. The record is devoid, however, of any direct evidence that the license number given to the police or recounted by Mrs. Porter at trial was indeed that of the defendant. The McMinnville Police Chief testified that he received a license number from Mrs. Porter, made an investigation and as a result gave certain information to Mr. Porter, who then swore out an arrest warrant for the defendant Judge. No documentary evidence of any kind relating to the license number was introduced at trial, an unfortunate gap in the evidence which presumably can and should be filled in when the case is retried.

Mrs. Porter made an in-court identification of the defendant, saying she had "no doubt whatsoever" that he was the person

she saw at her home on April 6. She said she had seen him one other time prior to trial, at the preliminary hearing in this cause, and that she had also identified him on that occasion. Her eyewitness identification was undermined and to some extent made suspect, however, by the fact that shortly after the burglary her husband had hired a private detective who presented the Porters with a picture of the defendant sometime prior to the preliminary hearing. This purportedly was done to avoid the possibility that the defendant would somehow change his appearance prior to trial in an effort to frustrate his identification. No such action was undertaken by the defendant, who insists that the in-court identification was tainted by the existence of the photograph, which the Porters still had at home at the time of the trial. On cross-examination Mrs. Porter denied that her identification was based on or had been affected by the existence of the defendant's photograph, and testified that she recognized him "from seeing him" and not from looking at his picture. There is no evidence in the record regarding any description of the intruder given the police by Mrs. Porter. The police chief had forgotten what description she gave and apparently had no police report with him at trial from which he could refresh his recollection.

The defendant did not testify. He produced two alibi witnesses, one of whom, Virgil Sanders, was his brother-in-law, and the other of whom, Steven Hill, was married to the defendant's first cousin. Mr. Sanders testified that he had been fishing with the defendant in an adjacent county during the time the burglary occurred. He said he remembered the date because it was the birthday of a family member which was celebrated at a gathering later in the day. Mr. Hill testified that he had come by the defendant's home on business and saw the defendant and Mr. Sanders fishing in the pond behind defendant's house during the period described by Mr. Sanders. There were no other witnesses for the defense.

█ Taken altogether, the evidence against the defendant in this case can only be described as tenuous. Nevertheless, the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. The conviction will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963). While the evidence of guilt in this case is far from overwhelming, we cannot say that the evidence preponderates in the defendant's favor.

█ From the facts it is also clear that the trial judge committed no error in failing to charge the jury on attempt to commit a felony, which is made a lesser included offense of every graded felony under T.C.A. § 40–2520. The offense here was fully completed, a fact which was undisputed at trial. Where there is no evidence to support conviction of a lesser included offense, so that the accused can only be guilty of the greater offense or of no offense at all, it is not error to fail to charge the lesser offense. *James v. State*, 215 Tenn. 221, 385 S.W.2d 86 (1964), cert. denied, 381 U.S. 941, 85 S.Ct. 1777, 14 L.Ed.2d 705 (1965). The State's theory here was that the crime of burglary had been committed by the defendant, and the defendant's theory by interposition of an alibi defense was that he was wholly innocent. Therefore, the sole issue at trial was the perpetrator's identity, and there is no evidence in the record which would tend to reduce the grade of the offense. Under such circumstances it is unnecessary to instruct the jury on the lesser offense of attempt to commit a felony. *Patterson v. State*, 218 Tenn. 80, 400 S.W.2d 743, cert. denied, 385 U.S. 870, 87 S.Ct. 139, 17 L.Ed.2d 98 (1966).

█ The defendant next alleges that the court erred in giving the following charge to the jury:

You are the judges of the facts. In making up your verdict, you are to consider the law in connection with the facts, but This Court is the proper source from

which you are to get the law. In other words, you are the judges of the facts under the direction of the Court.

The defendant cites *Ford v. State,* 101 Tenn. 454, 47 S.W. 703 (1898) and insists that the instruction violates Article 1, Section 19 of the Tennessee Constitution:

> The jury shall have the right to determine the law and facts under the direction of the court in libel as in other criminal cases.

The State denies that the charge is erroneous as given, arguing that it comes closer to the language upheld in *Cordell v. State,* 207 Tenn. 231, 338 S.W.2d 615 (1960) than to the instruction disapproved in *Ford, supra.*

We find it unnecessary to decide the issue as posed in the briefs because the error in the charge, if any, is harmless under the standard applied in *Ford,* where the court said:

> . . . [The] mere failure to tell the jury that they are judges of the law is not necessarily reversible error. . . . [W]here no injury could have resulted to defendant, it is not reversible error. Such a case is one where, whoever judged of the law, it was sufficiently and accurately charged, and as fully as should have been.

Some doubt was cast on the validity of *Ford* by such intervening cases as *Dykes v. State,* 201 Tenn. 65, 296 S.W.2d 861 (1956), wherein the court held that under Tennessee law constitutional error could never be harmless error. This misconception was cleared up by the opinion in *Huffman v. State,* 3 Tenn. Cr.App. 124, 458 S.W.2d 29 (1970). The result is the rehabilitation of *Ford.* Because there was no other error in the charge, under the rule announced in that case any error committed by the trial court here is at most harmless.

On retrial, the court below can avoid the possibility of committing unnecessary harmful error by altering its charge to conform to the approved instruction set out in *Ford.*

The last and most serious question raised by this appeal is the allegation of prejudice to the defendant by improper remarks of the prosecutor during final argument. Not all of the statements complained of were in fact improper, but on one occasion the prosecutor's comments were ruled improper by the trial judge, as seen in the following exchange:

> [PROSECUTING ATTORNEY]: . . . And this Steve Hill, who I know peculiar things about—
>
> DEFENSE ATTORNEY: Object, Your Honor.
>
> THE COURT: Sustained. You will not consider that remark, Ladies and Gentlemen.
>
> PROSECUTING ATTORNEY: Whose character I have formed an opinion about.
>
> DEFENSE ATTORNEY: Your Honor, I objected to it.
>
> PROSECUTING ATTORNEY: And I think you can form an opinion from the evidence.
>
> DEFENSE ATTORNEY: Your Honor, we object to this.
>
> THE COURT: Well, Ladies and Gentlemen—
>
> DEFENSE ATTORNEY: And respectfully move for a mistrial.
>
> THE COURT: I overrule that motion. Ladies and Gentlemen, you will not consider what any lawyer says that he happens to know about somebody if that evidence did not come from this witness stand. You may proceed, General.
>
> PROSECUTING ATTORNEY: May it please the Court, what I meant to say—
>
> DEFENSE ATTORNEY: Your Honor, we except.
>
> THE COURT: Overrule your motion.
>
> PROSECUTING ATTORNEY: I formed an opinion as to what kind of character he is from the testimony up here on this witness stand . . .

While the prosecutor's statement was without question improper, the question before us is whether it was so prejudicial to the defendant as to invalidate his conviction. We think that it was.

■ *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758 (1965) sets out the test to be applied by the appellate court in reviewing instances of improper conduct, i. e., "whether the improper conduct could have affected the verdict to the prejudice of the defendant."

The courts and commentators seem to agree that there are some five factors which should be considered in making this determination:[1]

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

■ In applying the basic principle that the improper statement must be taken in context and weighed in terms of the facts and circumstances of each case the courts have considered whether the remarks were lengthy or repeated, or whether the statement was single or isolated. They have also taken into account whether the improper remark of the prosecutor was made in response to the defendant's comments or argument, *see, e. g., Coke v. State,* 208 Tenn. 248, 345 S.W.2d 673 (1961), and the general "atmosphere" of the courtroom. This Court recognizes that some arguments are more heated than others, and that latitude must be given so as to allow effective argument by counsel. But that latitude must be limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.[2]

■ The prosecutor is an advocate, and is entitled to pursue his role with thoroughness and vigor. But, as set out in Justice Sutherland's classic opinion in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), the prosecutor also acts as:

. . . the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obliga-

---

1. *See, e. g.,* Alschuler, *Courtroom Misconduct by Prosecutors and Trial Judges,* 50 Tex.L.Rev. 629 (1972); Vess, *Walking a Tightrope: A Survey of the Limitations on the Prosecutor's Closing Argument,* 64 J.Crim.L. & Criminology 22 (1973); Oliver, Supreme Court's View as to What Courtroom Statements Made by Prosecuting Attorney During Criminal Trial Violate Due Process or Constitute Denial of Fair Trial, Annotation, 40 L.Ed.2d 886 (1975).

2. The Code of Professional Responsibility, Canon 7, Ethical Consideration 7–13, promulgated by the American Bar Association, provides as follows:

The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict (citing to *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).

And in Disciplinary Rule 7–106, the Code provides that a lawyer shall not:

(C)(1) State or allude to any manner that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence. . . .

 \* \* \* \* \* \*

(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

. . .

(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness . . . or as to the guilt or innocence of an accused . . . .

In its Standards Relating to the Prosecution Function, the American Bar Association has adopted the following relevant standards:

5.8 Argument to the jury

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony

. . .

5.9 Facts outside the record.

It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record . . .

Unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice.

tion to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

In this case the prosecutor, quite naturally spurred by his duty and undoubtedly also by the obvious closeness of his case, nevertheless overstepped the line between the fair and the foul, engaging in unwarranted personal opinion and insinuation. In the last analysis, he became a witness against the defendant, testifying not only to facts outside the record but also to matters within his personal knowledge as the chief law enforcement official in the county. In effect, then, the prosecutor placed his own credibility in issue before the jury. Because of the special regard in which the district attorney is held by the citizenry, under such circumstances the effect on the jury is likely to be pronounced. The nature

of the remark, the repeated effort by the prosecutor to convey the idea to the jury, and the fact that it was directed to an alibi witness here combine to produce the strong possibility of prejudice to the defendant. While the alibi defense presented by the defendant is not conclusive, it bears no special indication of being manufactured or fabricated. It is true that the verdict of the jury has the effect of accrediting the State's case and discrediting the proof offered by the defense. But the question is whether in this case the jury could have considered with impartiality the alibi evidence presented by the defendant, given the improper comment by the prosecutor. The problem is compounded by the content of the alibi instruction normally charged under Tennessee law.[3]

The second factor to be weighed in determining whether the test in *Harrington* has been met is the curative measures undertaken by the court and by the prosecution.

■ The State maintains that the trial court's ruling sustaining the defendant's objection to the improper remark and the contemporaneous instruction to the jury cure any prejudice to the defendant and make any error harmless as a matter of law, citing *Gaston v. State*, 506 S.W.2d 802 (Tenn.Cr.App.1973), *French v. State*, Tenn.Cr.App., 489 S.W.2d 57 (1972), *Cantrell v. State*, 3 Tenn.Cr.App. 434, 463 S.W.2d 145 (1970), and *Dishman v. State*, 3 Tenn.Cr.App. 725, 460 S.W.2d 855 (1970). We have studied these cases carefully and find that they do not support the general proposition of automatic cure. We think that an improper statement by the prosecutor made during argument may constitute reversible error despite curative instructions by the trial court.

3. In this case the trial court charged the jury with respect to the law of alibi:

You are, Ladies and Gentlemen of The Jury, instructed to consider the proof of an alibi with strictness and caution, as it is a defense so liable to abuse, from the ease with which it is concocted when a design exists to practice a fraud on the State, and, even if no such design does exist, by ignorant mistake as to particular hour and the lapse of time, that it requires great strictness and caution on the

part of The Court and Jury to avoid frequently being misled by it. . . .

The evidence, to establish an alibi, must be very strong. And the defense of an alibi, to be good, must be supported by very positive and satisfactory testimony. . . . [P]roof of an alibi can only be conclusive when, taken as true, it shows that there was no reasonable possibility of the defendant's presence at the time and place of the alleged crime.

The trial judge here instructed the jury to disregard the remark but took no additional steps to assure removal of prejudice. We believe in view of the highly prejudicial nature of the statement, that further action was called for, e. g. an admonition to the prosecutor. In the absence of such a rebuke, the prosecutor continued his efforts to convey to the jury his personal knowledge or opinion of the witness in question. And the prosecutor made no retraction.

A third factor involves examination of the prosecutor's intent in making the improper statement, although arguably the prejudicial effect to the defendant is the same regardless of the prosecutor's good or bad intent. In any case, the prosecutor here clearly was not acting in the kind of "good faith" demonstrated in *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).[4]

While we find no other error in the record presented to us, and therefore do not need to weigh the cumulative effect of the prosecutor's statement with other errors committed at trial, it is apparent that the fifth factor does deserve consideration in this case. The courts quite properly have tended to look to the relative strength or weakness of the case in determining the likelihood of prejudice in the minds of the jury. While the evidence here preponderates in the State's favor on appeal, this case was a very "close" one at trial when viewed by the reasonable doubt standard. Therefore, the prejudicial impact of the statement on the jury is likely to have been greater than it would have been had evidence of defendant's guilt been overwhelming. *See Berger v. United States, supra*, 295 U.S. at 89, 55 S.Ct. 629, and cases cited therein.

 In conclusion we have here an improper statement of a very prejudicial nature concerning facts outside the record, resting on the prosecutor's credibility, with repeated efforts to convey the thrust of the statement to the jury; there was no retraction and the corrective statement by the court may not have been sufficient to be entirely curative; the prosecutor's statement cannot be said to have been made in good faith; and it occurred in a case which on the record can only be characterized as "weak," thereby increasing the likelihood of prejudice in the determination of the guilt or innocence of this defendant. Applying, as we must, the reasonable doubt standard to this question, we find that the improper statement could have affected the verdict to the prejudice of the defendant. *Harrington v. State, supra*, 215 Tenn. at 340, 385 S.W.2d 758; *Huffman v. State*, 3 Tenn. Cr.App. 124, 458 S.W.2d 29 (1970); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Certainly we are unable to say beyond a reasonable doubt that it did not.

Furthermore, in this case the prejudicial statement went to the issue of the defendant's guilt or innocence, and was not of the inflammatory nature designed to affect the punishment alone, as was the case in the recent decision in *Smith v. State*, 527 S.W.2d 737 (Tenn.1975). Therefore the appropriate relief lies not in adjustment of the sentence, but by remand to the court below for a new trial.

Reversed and remanded.

WALKER, P. J., and RUSSELL, J., concur.

---

4. In *Frazier* the prosecutor in his opening statement made a summary of testimony he expected to receive from a certain witness who subsequently invoked his privilege against self-incrimination when called by the State as a witness. The United States Supreme Court held that the record reviewed as a whole failed to indicate deliberate misconduct by the prosecutor.