IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 9, 2004

**STATE OF TENNESSEE v. ROGER M. STAPLES**

**Appeal from the Circuit Court for Franklin County**
**No. 14250 B & C   J. Curtis Smith, Judge**

---

**No. M2003-01433-CCA-R3-CD - Filed June 14, 2004**

---

The appellant, Roger Murel Staples, was convicted by a jury of possession of more than .5 grams of cocaine with the intent to sell or deliver. After a sentencing hearing, the trial court sentenced the appellant to nine years as a Range I, Standard Offender. The trial court denied a motion for new trial. In this direct appeal, the appellant challenges the sufficiency of the evidence, his sentence, statements made by the prosecutor during closing argument, and the trial court's decision to admit evidence of activity at the appellant's residence. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and NORMA MCGEE OGLE, JJ., joined.

Thomas C. Faris, Winchester, Tennessee, for the appellant, Roger M. Staples.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In May of 2001, the appellant lived in Apartment 10 at the South Point Apartments in Winchester, Tennessee. A man by the name of Phillip P.M. Smith had been "hanging out" at his apartment for about a week.

On the afternoon of May 3, Richard Hunt, one of the appellant's friends and neighbors, stopped by Apartment 10 on his way home from work. Carl Leggett, another friend, was sitting

outside the apartment in a chair eating a hamburger. Mr. Hunt talked with Mr. Leggett for a few minutes, then left to go to his own apartment. While Mr. Hunt was talking to Mr. Leggett, he noticed a "beer cap" that looked like it had a "[crack cocaine] rock laying in it beside the chair he was setting [sic] in." Mr. Hunt got a beer and proceeded to go back to the appellant's apartment when the appellant "called us over" several minutes later. Mr. Hunt said it "appeared that he [Phillip P.M. Smith] was selling dope out of there, because you seen [sic] different people just coming in and out all the time."

Within five minutes of Hunt's return to the appellant's apartment, Officer Danny Mantooth and Lieutenant Danny Fay of the Winchester Department of Public Safety executed a drug search warrant on the appellant's apartment. The officers had observed various people coming and going to and from the residence earlier that day. When the officers arrived, the front door was open. The appellant, Mr. Leggett and Mr. Hunt were in the front room and Mr. Smith was in the bedroom on the bed. Mr. Smith was seen placing something under the covers. The officers later recovered from the bedroom a plastic bag containing smaller "corner bags" of crack cocaine. The cocaine recovered from the bedroom weighed 12.7 grams. In the front room, the officers discovered a beer bottle cap holding four rocks of crack cocaine in cellophane that weighed .5 grams.

Upon the officers' arrival, Mr. Leggett was approximately one foot from the crack found in the living room, while Mr. Hunt was eight feet away. The appellant was approximately two and a half feet from the drugs. The appellant was eleven feet away from the drugs in the bedroom, while Mr. Leggett and Mr. Hunt were ten feet and eight feet away, respectively. The three men in the living room claimed that they did not know who owned the drugs. Mr. Hunt was found to have a pill in his pocket.

The three men in the living room were initially charged with possession of the drugs in the living room while Mr. Smith was charged with possession of the drugs in the bedroom. Upon presentment to the grand jury, however, all four of the men were indicted for possessing all of the drugs. Specifically, they were indicted for possession of more than .5 grams of cocaine with the intent to sell or deliver in violation of Tennessee Code Annotated section 39-17-417.

Prior to trial, Mr. Hunt pled guilty and Mr. Smith "jumped bond." Mr. Hunt testified at the joint trial of the appellant and Mr. Leggett. While he denied knowledge of the drugs and claimed that he had not seen the appellant or Mr. Leggett sell drugs, he testified that Mr. Smith was probably selling drugs out of the apartment because of the amount of traffic coming in and out.

The appellant testified that he had no knowledge of the drugs in the front room or the bedroom, but then stated that he did not "know he had that much in there" when speaking about the drugs that Mr. Smith had in the bedroom.

At the conclusion of the trial, the jury found the appellant guilty of the indicted offense. Mr. Leggett was found guilty of criminal responsibility for facilitation of felony possession of a

controlled substance with the intent to sell or deliver. The trial court held a sentencing hearing and sentenced the appellant to nine years in the Tennessee Department of Correction.

After the trial court rejected a motion for new trial, the appellant filed a timely notice of appeal seeking resolution of the following issues: (1) whether the trial court erred by admitting evidence of alleged drug sales at the residence; (2) whether the prosecutor make improper remarks in closing argument; (3) whether the evidence was sufficient to support the verdict; and (4) whether the trial court erred in sentencing.

## Motion in Limine

On appeal, the appellant claims that the trial court erred by admitting testimony concerning persons coming and going into and out of the apartment prior to the execution of the search warrant. Specifically, the appellant argues that the "trial court erred in the face of the motion in limine filed by the appellant by allowing the prosecution to repeatedly bring in evidence of alleged prior drug dealing at the residence in question contrary to the court's own previous statements." The State argues that the trial court properly admitted the evidence.

Prior to trial, the appellant filed a motion in limine seeking to exclude testimony "dealing with the taking of the search warrant" or "matters prior to the entering of the apartment, since there was no indictment or charge of any sale in the case." The motion was overruled. During the discussion of the motion, however, the trial court instructed the State to avoid testimony about the fact that the appellant's residence is located in an area with much police and drug activity.

On appeal, the appellant points out three separate exchanges that he argues "led to the obvious inference by the State that this was a high-crime area and/or that there were continuing drug sales" and that the introduction of the evidence violated Tennessee Rule of Evidence 404(b) which prohibits evidence of other crimes. The three particular instances complained of are as follows. First, Officer Mantooth was asked the following during his testimony:

> QUESTION: So if you had seen, Mr. Mantooth, people going in and out of that apartment, do you know what those people were doing when they were going in and out?
> ANSWER: I suspected what they might have been doing.
> QUESTION: Were some of the people that went in and out of the apartment, were they known to you?
> ANSWER: If I remember correctly, I knew maybe one or two of them. I remember a white male, I knew him.
> DEFENSE COUNSEL: I interpose a continuing objection to this line, Your Honor.
> COURT: Sustained.

Later in the trial, during the testimony of Mr. Hunt, the following exchange took place:

QUESTION: And back track just a moment. During this week that Phillip Smith was at the apartment did you see with your own eyes and hear Mr. Smith selling crack cocaine from that location?
DEFENSE COUNSEL: Objection, Your Honor.
COURT: Overrule the objection.
ANSWER: Answer the question?
COURT: Answer the question.
ANSWER: It appeared that he was selling dope out of there because you've seen different people just coming in all of the time.
. . . .
QUESTION: And when you've stated, I think, that you had seen Mr. Smith sell crack cocaine?
ANSWER: Yes sir.
QUESTION: Had you ever seen him sell it outside?
ANSWER: No, sir, people going in and out of the house and you know, you figure that's what they're doing.

Finally, the following took place during the testimony of Lieutenant Fay:

QUESTION: After you had already secured the living room here and went [sic] over there to assist Officer Mantooth, did you notice the drugs that was [sic] there?
ANSWER: No, sir. I was not, at one point I was not searching for drugs. I was, it was a high risk search warrant, because we suspected that there was [sic] guns in the residence or the people had guns on them.
DEFENSE COUNSEL: Objection, Your Honor.
COURT: Sustained. The jury will disregard any suspects of weapons or whatever, totally disregard that.

The appellant argues that "in a case where the appellant again denied his guilt and evidence pointed toward other persons as the main perpetrators and/or possessors of the drugs in question" the trial court's failure to exclude the preceding evidence of prior drug dealing taking place at the apartment was not harmless.

When evaluating a trial court's ruling on a Tennessee Rule of Evidence 403 motion to exclude evidence, the initial inquiry is whether the evidence offered was relevant to the case under Tennessee Rule of Evidence 401. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

Tennessee Rule of Evidence Rule 403 permits a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Our supreme court has stated that unfair prejudice is "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." State v. DuBose, 953 S.W.2d 649, 654

(Tenn. 1997) (citing State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978)); see also State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996).

The determination of whether evidence is relevant, or, if relevant, should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court. State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994). In deciding these issues, the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial. State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989).

If a trial court, in the exercise of its discretion, finds that evidence is relevant within the meaning of Rule 401, and the accused is not entitled to have the evidence excluded for one of the grounds set forth in Rule 403, this Court will not interfere with the exercise of this discretion unless it appears on the face of the record that the trial court clearly abused its discretion. State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App. 1995); State v. Williamson, 919 S.W.2d 69, 79 (Tenn. Crim. App. 1995).

When exercising its discretion in the admission of evidence, the trial court must weigh the probative value against prejudicial effect. Furthermore, this Court cannot substitute its judgment for that of the trial court or declare error absent a finding that the trial court abused its discretion. State v. Robinson, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995) (citing State v. Melson, 638 S.W.2d 342 (Tenn. 1982)).

The appellant was indicted for possession of cocaine with intent to sell or deliver. Hence, evidence which tends to establish the appellant's intent to sell or deliver cocaine is relevant to the case. The trial court carefully limited the testimony to traffic in and out of the appellant's residence, sustaining two objections made by the appellant as to evidence that may have related more to the nature or reputation of the neighborhood as a den of illicit activity and police involvement. Further, the evidence admitted did not violate Tennessee Rule of Evidence 404(b) as evidence of other crimes. The evidence regarding people coming in and out of the appellant's apartment was admitted to show the appellant's intent to sell or deliver cocaine, not to show that specific sales were taking place. Moreover, simply entering and leaving a residence in not a crime. Such evidence is relevant however in a case wherein the State is attempting to prove possession of cocaine with the intent to sell or deliver. State v. Bigsby, 40 S.W.3d 87, 91 (Tenn. Crim. App. 2000). We conclude that the trial court did not abuse its discretion in admitting the evidence complained of. This issue is without merit.

Improper Remarks During Closing Argument

The appellant argues that comments by the prosecutor in closing argument were unduly prejudicial. Specifically, the appellant argues that comments by the prosecutor tended to paint the "residence in question as a drug haven, and to speculate that the appellant and possibly others would have had a lot of money later that night" because they would have completed drug sales and that the

prosecutor became a "witness against the defendant, testifying not only to facts outside the record but also to matters within his personal knowledge . . ." and that, as a result, the prosecutor inserted speculation and his own opinion into the closing argument. The State argues that the portion of the State's closing argument complained of "consists of reasonable inferences drawn from the evidence" and that the trial court did not abuse its discretion in overruling the appellant's objection.

In general, the scope of closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998). However, "argument must be temperate, . . . predicated on evidence introduced during the trial," and relevant to the issues being tried. State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994). Thus, the State must not engage in argument designed to inflame the jurors and should restrict its comments to matters properly in evidence at trial. State v. Hall, 976 S.W.2d 121, 158 (Tenn. 1998).

When a reviewing court finds improper argument, State v. Philpott, 882 S.W.2d 394 (Tenn. Crim. App. 1994), sets out five factors to determine "whether a prosecutor's improper conduct could have affected the verdict to the prejudice of the defendant." Id. at 408. The factors are: (1) the conduct complained of in light of the facts and circumstances of the case; (2) the curative measures undertaken; (3) the intent of the prosecutor in making the improper remarks; (4) the cumulative effect of the improper conduct and any other errors in the record; and, (5) the relative strength or weakness of the case. Id. (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

With these guidelines in mind we turn to the appellant's allegation. As above-referenced, the appellant complains that the prosecutor committed reversible error by arguing that the appellant and others found in the apartment would have had money on them later that night due to drug sales if the search warrant had been executed at a later time. According to the record, the defense counsels made the following statements during trial. Specifically, counsel for the appellant stated that there was "no paraphernalia, there was no money [when the police searched the apartment]. That would not exactly indicate that my client is the rich drug dealer of the month." Further, counsel for Mr. Leggett stated the following:

> When they searched him, if you've got a drug dealer and you search him, wouldn't you find money? Officer Mantooth sat here and testified that when he searches, when Mr. Leggett was searched, found no drugs, no paraphernalia, no money. Now, how is he going to be a drug dealer? He had just walked in the home. You don't find any money.

The prosecutor stated as follows during his closing argument in rebuttal to the arguments of both defense counsels:

> Both of them [the defense attorneys] made the point, you know, they didn't find any drugs on our clients. That would make the case easy. Easy cases usually don't end up in front of 12 making the decisions. Easy cases settle out. But it's just as much

crime to have constructive possession and it's in your pocket. These guys are, these defendant's aren't stupid. They're smart. Why don't they have a lot of money on them? Because they got all the crack cocaine on them. If they had come back in a few hours, later that night, maybe the end of the weekend, there'd been a lot of money there.

Defense counsel made a contemporaneous objection, which was overruled by the trial court.

In order to prevail on this issue, the appellant must not only show the argument was improper, but also must establish the alleged error prejudiced the appellant at trial. The test for establishing prejudicial error is whether the jury could consider the defendant's case with impartiality despite the alleged improper remark by the prosecutor. Judge, 539 S.W.2d at 344. Cases are reversed only when the improper argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." State v. Ashburn, 914 S.W.2d 108, 115 (Tenn. Crim. App. 1995) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

The prosecutor's comment on the lack of money found on the appellant was not entirely relevant to the issue before the jury. The comment injected the prosecutor's opinion that the appellant and his cohorts were, in fact, drug dealers. Thus, because the prosecutor's comments in this case reflect his personal opinion concerning the activities that were taking place in the appellant's apartment prior to the execution of the search warrant, we conclude the remarks were improper. However, after reviewing the entire record in this case, we further conclude that the appellant has failed to establish prejudice as a result of the remarks. There was not any money found on the appellant at the time of his arrest. The jury could have interpreted the lack of money and the appellant's testimony as to his lack of knowledge of the presence of drugs as proof that the appellant had nothing to do with the crack cocaine found in his apartment. Further, the remark was made by the prosecutor in response to argument of defense counsel. Argument that might otherwise be held improper does not constitute error where it is in response to the argument of the defendant. State v. Sutton, 562 S.W.2d 820 (Tenn. 1978); Ashburn, 914 S.W.2d at 115. Considering the factors set forth in Judge v. State, 539 S.W.2d 340 (Tenn. Crim. App. 1976), which should be considered to determine whether improper remarks made during arguments affected the verdict to the prejudice of the defendant, and the record as a whole, we conclude that any error made by the State during closing arguments was harmless. Id. at 344; see also Bigbee, 885 S.W.2d at 809. This issue is therefore without merit.

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces

it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was charged with possession of cocaine with intent to sell or deliver. The jury found him guilty. On appeal he argues that the evidence was not sufficient to support the verdict. Specifically, he argues that the larger amount of cocaine found in the bedroom was the property of Mr. Smith and that the smaller amount found in the front room was "strongly suspected to be in the possession of" Mr. Leggett as shown by the testimony of Mr. Hunt. The State counters that the evidence was sufficient "for the jury to infer and conclude that the defendant possessed the larger quantity of crack cocaine, which was found in the bedroom, with intent to sell or deliver the same" and that the appellant possessed the smaller quantity of cocaine found in the living room. The appellant's argument is essentially an argument that the evidence did not prove he had either actual or constructive possession of the drugs.

In order to convict the defendant, the State was required to prove beyond a reasonable doubt that the defendant (a) knowingly possessed crack cocaine, (b) with the intent to sell or deliver and (c) the amount of cocaine possessed was .5 grams or more. Tenn. Code Ann. §§ 39-17-417(a)(4) & (c)(1). The State unquestionably proved beyond a reasonable doubt that the substance found in the residence was crack cocaine; the weight of the cocaine exceeded .5 grams; and it was found in the apartment belonging to the appellant. Thus, the question is whether the appellant knowingly possessed the cocaine.

A conviction for possession of cocaine may be based upon either actual or constructive possession. State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Before a person can be found to constructively possess a drug, it must appear that the person has the power and intention at any given time to exercise dominion and control over the drugs either directly or through others. State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Cooper, 736 S.W.2d at 129. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996). However, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App.

1993).  The circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900.  In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime."  Id. (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

The majority of the testimony against the appellant came from Officer Mantooth and Mr. Hunt.  Officer Mantooth testified that the appellant was the lessee of the apartment, and that he was standing approximately two-and-a-half feet from the cocaine in the living room and eleven feet from the cocaine in the bedroom.  Officer Mantooth testified that he saw numerous people coming into and out of the appellant's apartment prior to the execution of the search warrant.  The appellant himself testified that Mr. Smith was not staying at his apartment, but that he was just "hanging out."  The appellant also testified that the drugs were not his but then claimed that he did not know that Mr. Smith "had that much in there."  Mr. Hunt claims that he saw the beer cap outside the apartment prior to the execution of the search warrant.  The appellant insists that this testimony of Mr. Hunt incriminates Mr. Leggett as the possessor of the cocaine in the living room rather than the appellant.  However, we are required to view the evidence in the light most favorable to the State. State v. Abrams, 935 S.W.2d 399, 401 (Tenn.1996).  Furthermore, we are not at liberty to judge the weight and credibility of the testimony as these matters are entrusted exclusively to the jury.  State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In a light most favorable to the State, it is undisputed that the appellant was the lessee of the apartment and that crack cocaine was found in two separate locations in the appellant's apartment.  Immediately prior to the execution of the search warrant, Mr. Hunt testified that he and Mr. Leggett were outside the apartment.  Officer Mantooth observed numerous persons entering and exiting the residence where the defendant was present.  Although most of the cocaine was found in the bedroom, a small amount of cocaine was in a beer cap in the living room approximately two and a half feet away from the appellant.  From this testimony a jury could rationally conclude that the appellant possessed the drugs.  A jury could further rationally conclude that the appellant, by having over 13 grams of cocaine in his apartment, acted with the intent to sell drugs. Accordingly, the evidence was sufficient to support the appellant's conviction.

While this evidence is not overwhelming, it need not be.  This evidence is sufficient to support the jury's determination in that "it fairly and legitimately tends to connect the defendant with the commission of the crime charged." See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994), superceded by statute as stated in State v. Stout, 46 S.W.3d 689 (Tenn. 2001). The appellant's argument regarding the weakness of the evidence pertains to the weight of the evidence, which was to be determined by the jury.  Our role on appeal is simply to determine whether the evidence was legally sufficient for any trier of fact to have found the essential elements of the offense beyond a reasonable doubt.  We conclude that it was.

Finally, the appellant challenges the sentence imposed by the trial court. Specifically, the appellant complains that the trial court "failed to consider any of the mitigating factors submitted by the defendant and upheld all of the State's alleged enhancing factors and specifically did not consider the appellant's lack of any prior felony record." The State argues that the trial court did not err in sentencing.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

Turning more specifically to the facts of this case, the appellant was convicted of possession of more than .5 grams of cocaine with intent to sell or deliver. Because this is a Class B felony, and the appellant is a Range I Standard Offender, the range of punishment is "not less than eight (8) nor more than twelve (12) years." Tenn. Code Ann. § 40-35-112(a)(2). Furthermore, the presumptive sentence would be the minimum sentence in that range if there are no enhancing and mitigating factors present. Tenn. Code Ann. § 40-35-210(c).

In the case herein, the appellant filed a motion prior to sentencing in which he proposed the application of the following mitigating factors: (1) the defendant's criminal conduct neither caused nor threatened any serious bodily injury, Tenn. Code Ann. § 40-35-113(1); (2) the defendant played a minor role in the commission of the offense, Tenn. Code Ann. § 40-35-113(4); (3) the defendant has no previous felony convictions; (4) there was no violence or threat of violence associated with the crime and conviction in question; (5) the defendant is not highly educated and did not fully

comprehend all the questions that were asked of him; and (6) the defendant made efforts to recognize minor culpability and enter a plea, but was prohibited from doing so.

In imposing the appellant's sentence, the trial court found the existence of several statutory enhancement factors, including: (1) that the appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(2); and (2) that the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn. Code Ann. § 40-35-114(9). The trial court did not find that any of the mitigating factors proposed by the appellant applied to reduce his sentence. The appellant challenges only the trial court's refusal to apply several of the mitigating factors. Because the record demonstrates that the trial court properly considered the relevant sentencing principles, we apply the presumption that the determination made by the trial court was correct.

## A. Mitigating Factor (1)

The appellant first claims error in the trial court's rejection of mitigating factor (1). He claims that his conduct neither caused nor threatened serious bodily injury, yet concedes that the court's rejection of this mitigator in a cocaine possession case is proper under State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997). Specifically, the appellant claims that the trial court's approach was inconsistent in that it rejected the application of the mitigating factor yet agreed factually that there was no "violence" as stated by the appellant in another proposed mitigating factor. The State counters that the trial court's failure to find the absence of violence or threat of violence to be a mitigating factor is not error.

This Court has held in the past that Tennessee Code Annotated section 40-35-113(1) should not be applied when the defendant is convicted of an offense involving cocaine. See State v. Holston, 94 S.W.3d 507, 511 (Tenn. Crim. App. 2002); Vanderford, 980 S.W.2d at 407; in State v. Ross, 49 S.W.3d 833, 848 (Tenn. 2001), the Tennessee Supreme Court held that when

> (1) the conviction for possession [of cocaine] is based only upon constructive possession, and (2) the threat of serious bodily injury is more conceptual than real, little justification exists in having a per se rule that excludes consideration of this mitigating factor. Indeed, a per se exclusion of a particular mitigating factor to an entire class of offenses not always or not inherently involving serious bodily injury undermines the notion of individualized sentencing that underlies the 1989 Criminal Sentencing Reform Act.

The court based its decision on the conceptual nature of the threat of serious bodily injury and the lack of evidence showing that the defendant sold or attempted to sell the drug at the time of the offense. Id. Thus, the determination as to whether to apply this mitigating factor should be made on a case by case basis.

-11-

Here, the record shows that the appellant allowed over 13 grams of cocaine in his residence and was found to have possessed the cocaine with the intent to sell or deliver. There was testimony by Officer Mantooth that there were many people seen going into and out of the apartment prior to the execution of the search warrant. There was, however, no direct evidence of a sale. If there was evidence that the appellant had engaged in such activity, "the dangerous nature of the drug, combined with the dangerous nature of many drug transactions, may have indeed supported the trial court's rejection of this factor as constituting a threat of serious bodily injury." Id. In the absence of any evidence of actual sales of cocaine, we conclude that the trial court may have erred in refusing to consider Tennessee Code Annotated section 40-35-113(1). However, "in rejecting a per se exclusion of this mitigating factor in cocaine possession cases, we do not require that this factor be accorded any especial significance in a given case." Id. Thus, we conclude that, even if the trial court should have considered this mitigating factor, the length of the appellant's sentence is appropriate given his criminal history and the circumstances of the case. See State v. Chianti Fuller, No. M2001-00463-CCA-R3-CD, 2001 WL 1660846, at *6 (Tenn. Crim. App. at Nashville, Dec. 28, 2001); State v. Mikel U. Primm, M2003-02447-CCA-R3-CD, 2001 WL 21766241, at *4 (Tenn. Crim. App. at Nashville, July 30, 2003). This issue is without merit.

## B. Mitigating Factor (4)

The appellant also asserts that the trial court erred in not applying mitigating factor (4). He claims that he "played a minor role in the commission of the offense" and that "the drugs involved in this matter belonged to other parties." The State argues that the trial court's refusal to apply this mitigating factor is adequately supported by the record. We agree.

The facts do not suggest that the appellant played a minor role in the commission of the offense. In making its determination, the trial court opined that while the appellant perhaps did not play the most major role, he did not play a minor role. The cocaine was located in the appellant's apartment and he was found standing two and a half feet away from the small quantity of cocaine found in the living room and eleven feet away from the large quantity of cocaine found in the bedroom. These actions do not indicate that the appellant played a "minor role." The trial court's refusal to apply mitigating factor (4) is supported by the record.

## C. Lack of a Prior Criminal Record

Finally, the appellant contends that his lack of a prior felony record should have been considered as a mitigating factor under the catch-all provision of Tennessee Code Annotated section 40-35-113(13). The State counters that while the appellant has no prior felonies, the appellant has an extensive criminal history and "cannot benefit from such a mitigator, because he does not have a clear prior criminal record."

The lack of criminal history is appropriately considered in mitigation. See State v. Gutierrez, 5 S.W.3d 641, 646 (Tenn. 1999). However, although absence of a prior criminal record may be considered under the catch-all provision of Tennessee Code Annotated section 40-35-113(13), State v. Hicks, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993), the court is not required to consider this as a mitigating factor. State v. Williams, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995). The presentence report herein indicates that the appellant has an extensive criminal record, including three convictions for driving under the influence, a conviction for public intoxication, a conviction for driving with a revoked license, a conviction for property damage, and several retired charges. While the appellant has no prior felonies, he certainly does have a criminal history. We conclude

that the trial court properly refused to consider the appellant's lack of criminal history as a mitigating factor.  This issue is without merit.

## Conclusion

After a thorough review of the record, we conclude that there is no reversible error. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE