

**FILED**

**March 25, 2008**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**SEPTEMBER 1995 SESSION**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 01C01-9506-CC-00170** |
| Appellee, | ) | |
| | ) | **GRUNDY COUNTY** |
| VS. | ) | |
| | ) | **HON. THOMAS W. GRAHAM,** |
| **CHARLES EDWARD MEEKS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (First-Degree Murder) |


FOR THE APPELLANT:                    FOR THE APPELLEE:


**DALE M. QUILLEN**                         **CHARLES W. BURSON**
**MICHAEL J. FLANAGAN**                 Attorney General & Reporter
95 White Bridge Road
Suite 208                                        **ELLEN H. POLLACK**
Nashville, TN   37205                       Asst. Attorney General
                                                       450 James Robertson Pkwy.
                                                       Nashville, TN   37243-0493


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

**O P I N I ON**

The defendant, Charles Edward Meeks, was indicted for first-degree murder. The jury found him guilty as charged and he was sentenced to life imprisonment. He has appealed as of right, raising for review the trial court's instructions to the jury and the State's conduct during closing argument. We find the defendant's issues are without merit and affirm the judgment of the trial court.

The defendant first challenges the trial court's refusal to instruct the jury on the defense of involuntary intoxication. He next complains that he was denied a fair trial because of improper closing argument by the State and the trial court's subsequent failure to admonish the State and give a curative instruction.

In January, 1994, the defendant was shot in the forehead with a .22 caliber bullet. The bullet lodged in his right frontal sinus and remained there for several months. On February 19, 1994, the defendant was admitted to the hospital to have an abscess treated that had formed around the wound. He was discharged from the hospital on Wednesday, February 23, 1994, and was given two Percocets and a prescription for antibiotics. Percocet is a Schedule II drug used for moderate pain.

On Saturday, February 26 ,1994, the defendant was suffering from a severe headache. Rose Meeks, the defendant's ex-wife, called a doctor at the hospital where the defendant had been treated, who prescribed Percocet for the defendant's pain. At about 4:00 p.m., Ms. Meeks drove the defendant to the hospital where she picked up the prescription. Ms. Meeks then drove to a pharmacy and had the prescription filled. Between 6:00 and 8:30 p.m., she gave the paper bag containing the prescription bottle to the defendant, who immediately took "some" of the drug. On the way home from the

2

hospital, Ms. Meeks stopped at a liquor store and the defendant purchased some liquor.

After arriving home at approximately 10:30 p.m., the defendant prepared a mixed drink for himself and Ms. Meeks. He also took some more Percocet. The defendant testified that he had taken a total of four to five Percocets that day. Shortly after they arrived home, Ms. Meeks invited Ann Coffelt and the victim, Charles Coffelt, over for a visit. Ann Coffelt is Ms. Meeks' sister. Upon the Coffelts' arrival between 11:00 and 11:30 p.m., the defendant mixed himself another drink and also fixed one for the victim. The defendant testified that he had had no other alcohol that day.

After visiting for a few minutes, the defendant and the victim began arguing. Although the exact sequence of events was disputed at trial, the defendant testified that the victim had struck him with his fist "right between the eyes." He testified that, after hitting him, the victim "came back at me again with another right," at which point the defendant produced a pistol and shot the victim twice. Although the defendant subsequently administered CPR to the victim, Mr. Coffelt died a short time later. The defendant was taken into police custody at approximately 11:45 p.m., and gave a sworn statement at approximately 2:00 a.m. on February 27, 1994. The TBI agent who took the statement testified that the defendant was "very nervous" but "sober."

The defendant pled not guilty to first-degree murder and relied on self-defense. At trial, the defendant's counsel advised the court that he would be offering proof on the issue of voluntary intoxication. At the conclusion of closing arguments, defense counsel requested a jury instruction on the defense of involuntary intoxication. The trial court denied this request, finding that there was "not sufficient evidence in the record to warrant that charge." The trial court did, however, charge the jury with the law on voluntary intoxication. The defendant now asks this Court to find the trial court in error

3

for refusing to give the requested charge on involuntary intoxication.

T.C.A. § 39-11-203 provides that "[t]he issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof."  Where evidence is admitted which does fairly raise a defense, the appropriate jury instruction is required. State v. Phipps, 883 S.W.2d 138 (Tenn. Crim. App. 1994).  Thus, the question before this Court is whether the testimony given at trial tended to establish the defense of involuntary intoxication.  We hold that it did not and that the trial court was correct in refusing to give the requested charge.

The defense of involuntary intoxication is codified at T.C.A. § 39-11-503(c). In pertinent part that statute provides that "involuntary intoxication is a defense to prosecution if, as a result of the involuntary intoxication, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of the law allegedly violated."  Thus, this defense has three distinct elements:

> (1)    the defendant must be intoxicated;
>
> (2)    the intoxication must have occurred involuntarily; and
>
> (3)    the intoxication must be the cause of the defendant's lack of substantial capacity to either:
>
>> (a)    appreciate the wrongfulness of his or her conduct, or
>>
>> (b)    conform his or her conduct to the law's requirements.

The element of intoxication is defined as a "disturbance of mental or physical capacity resulting from the introduction of any substance into the body." T.C.A. § 39-11-503(d)(1).  The defendant testified that, on the day he shot the victim, he had introduced both alcohol and Percocet into his body.  The surgical resident who treated

4

the defendant's abscess testified that the side effects of Percocet include light-headedness, dizziness and sleepiness, and that it produces results similar to intoxication. He further testified that alcohol would magnify the effects of Percocet. The defendant testified that he had gotten "a little dizzy" right before the victim allegedly hit him. This testimony was sufficient proof to support a finding by the jury that the first element of the defense was satisfied.

The second element requires that the intoxication be found "not voluntary." T.C.A. § 39-11-503(d)(2). Voluntary intoxication is defined as "intoxication caused by a substance that the person knowingly introduced into the person's body, the tendency of which to cause intoxication was known or ought to have been known." T.C.A. § 39-11-503(d)(3). In order to be involuntary, then, the substance must have been introduced either unknowingly, or without knowledge or reason to be aware of the substance's intoxicating effects. There is no proof in the record, however, that the defendant lacked the requisite knowledge in either respect. The record makes it clear that the defendant understood he was ingesting a painkilling medication and, later, drinking alcohol. Thus, the defendant's argument to this Court rests largely on the notion that, even if he was deliberately combining a painkilling medication and alcohol, he did not know and had no reason to know of the intoxicating effect.

However, the record is bereft of any testimony by the defendant that he was ignorant of Percocet's side effects. He would have this Court infer that he knew nothing about the side effects because of his inability to read the label on the prescription bottle.[1] Yet, the record reveals that the defendant had had the opportunity to be told of Percocet's side effects when he was given some upon his discharge from

---

[1] The Defendant testified that, although he had completed a portion of third grade, he was illiterate.

the hospital. Those Percocets also afforded him the opportunity to discover the side effects for himself by direct experience. The defendant is attempting to establish his level of knowledge (or lack thereof) for the first time on appeal. This he cannot do, and his failure to adduce the necessary proof at trial was fatal to this defense.

The record is likewise bereft of any evidence sufficient to satisfy the third element of the defense of involuntary intoxication. The surgical resident who treated the defendant's abscess rendered no opinion as to whether the ingestion of alcohol and Percocet would or could result in the loss of "substantial capacity" contemplated by the statute. Nor did the defendant testify that his mental capacity had been adversely affected by his ingestion of Percocet and alcohol. The defendant's testimony that he was "a little dizzy" prior to shooting the victim is evidence as to his physical well-being, but not as to his mental capacity. Likewise, his testimony that, after the victim had hit him, he was "real weak" and was having vision and hearing problems, does not go to proving a reduced mental capacity. The record instead supports the inference that the defendant's mental capacity was not adversely affected: he maintained the presence of mind to perform CPR on the victim, and he gave a coherent statement to the police approximately two and one-half hours after the shooting. The defendant failed to adduce any proof at trial tending to show the existence of the third element of the defense of involuntary intoxication.

Since the proof at trial did not fairly raise all of the elements of the defense of involuntary intoxication, the trial court correctly refused to charge the jury as requested. Since the defendant's proof did fairly raise the issue of his intoxication, the trial court was correct in giving the jury charge on voluntary intoxication. That charge enabled the jury to consider whether the defendant's intoxication rendered him incapable of possessing the required culpable mental state for first-degree murder. The defendant

6

was not entitled to any additional charge.

The defendant next complains that the district attorney made improper remarks during closing argument, which the trial court failed to cure through a proper instruction, thereby prejudicing the jury. We find this issue to be without merit.

During closing argument, the district attorney stated, "I don't believe [the victim] ever touched [the defendant]." Later in his closing, the district attorney miscalculated the amount of alcohol the victim was alleged to have drunk on the day he was shot,[2] commenting at the same time that he didn't think the expert witness' testimony about the amount of alcohol found in the victim's bloodstream was "reasonable."

The defendant objected to the district attorney stating his beliefs, which the trial court overruled on the basis that "this is final argument." The trial court also overruled the defendant's objection to the district attorney's miscalculation of the amount of alcohol the victim was alleged to have consumed. The defendant argues that the district attorney's statements, combined with the trial court's refusal to sustain his objections and issue a curative instruction, have deprived him of a fair trial.

In support of his position, the defendant is required to show that the argument was so inflammatory or the conduct so improper that it affected the verdict to his detriment. Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). In reviewing an allegation of improper conduct, this Court should consider several factors including the intent of the prosecutor, the curative measures which were undertaken by the court, the

---

[2]The physician who performed the autopsy on the victim testified that his blood alcohol content indicated that the victim had consumed the equivalent of 23 bottles of 12 oz. beer over a period of five hours. The district attorney miscalculated this amount as 4.3 gallons. It is, rather, 2.156 gallons.

improper conduct viewed in context and in light of the facts and circumstances of the case, the cumulative effect of the remarks with any other errors in the record, and the relative strength or weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

The trial judge has wide discretion in controlling the argument of counsel. That discretion will not be interfered with on appeal in the absence of an abuse thereof. Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975).

There is nothing in the record to suggest any deliberate misconduct by the district attorney. The testimony at trial was contradictory about whether the victim actually hit or merely swung at the defendant. Only the defendant testified that the victim had hit him. It is obvious from the State's prosecution of the defendant that it did not believe his protestations of self-defense. The district attorney's remarks that he didn't believe the defendant's version of the facts were merely redundant and therefore harmless. The trial court's failure to give a specific curative instruction was, accordingly, also harmless. Moreover, the trial court instructed the jury in its general jury charge that "statements, arguments, and remarks of counsel . . . are not evidence."

The district attorney's remarks concerning the number of alcoholic beverages the victim was alleged to have imbibed appear from the record to stem from nothing more than an incorrect mathematical calculation. The testimony at trial gave the jurors an exact number of ounces the victim would have had to have drunk in order to create the blood alcohol content found during the autopsy. Presumably, each juror was capable of converting the number of ounces into the correct number of gallons, and defense counsel's objection made it clear that the State's calculation might be wrong. This error was harmless. Likewise, the district attorney's statement that he didn't think

8

the amount was "reasonable" lost any prejudicial effect when the jury could determine that the actual amount was only half of what the district attorney was mistakenly claiming.

Under Harrington, the district attorney's comments were not so inflammatory or improper as to affect the jury's verdict to the defendant's detriment. We find any error as to these matters to be harmless beyond a reasonable doubt. The defendant's second issue is without merit.

Upon review of the record, this Court finds that the trial court's instructions to the jury were correct, and that the defendant suffered no harm from any misstatements by the State during closing argument. The defendant's conviction is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:


_____
PAUL G. SUMMERS, Judge



_____
DAVID H. WELLES, Judge