# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 30, 2010

## STATE OF TENNESSEE v. DENNIS RAY BAILEY

### Direct Appeal from the Circuit Court for Dickson County
### No. 2008-CR-411    George Sexton, Judge

_____

### No. M2009-01620-CCA-R3-CD - Filed June 17, 2010

_____

The Defendant-Appellant, Dennis Ray Bailey, was convicted by a jury in the Circuit Court of Dickson County of driving under the influence, second offense, a Class A misdemeanor. He was sentenced to eleven months and twenty-nine days, suspended after serving 45 days in confinement, and ordered to pay a $600 fine. Bailey claims on appeal that he was denied a fair trial due to prosecutorial misconduct. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ. joined.

Michael J. Flanagan, Nashville, Tennessee, for the Defendant-Appellant, Dennis Ray Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Kelly Jackson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts**. Bailey was charged with driving under the influence, second offense. His first conviction, case number 5400501, occurred in May of 2001. At the trial for the second offense, the following testimony was presented:

Officer Michael Richard Eggman of the Dickson County Sheriff's Office testified that he was on patrol on March 7, 2008. At around 2:00 a.m., he noticed a vehicle, which was driven by Bailey, traveling at "a high rate of speed." Officer Eggman followed the vehicle to observe Bailey's driving. He noticed that Bailey left the roadway three separate times.

Each time, Bailey drifted past the right fog line and went entirely off the roadway. After following Bailey for several miles, Bailey "slowed very abruptly" to make a left-hand turn. Bailey was late in making the turn, and he was still traveling at a high rate of speed; consequently, his vehicle went "dramatically off the roadway." Officer Eggman initiated an investigatory stop. He approached Bailey's vehicle and asked for his driver's license and proof of insurance. Officer Eggman noticed that there was a passenger in Bailey's vehicle. Bailey struggled to find the requested documentation, so he handed Officer Eggman four envelopes from his glove box. Officer Eggman said one of the envelopes contained the vehicle registration and proof of insurance.

After reviewing Bailey's documentation, Officer Eggman asked Bailey to step out of his vehicle to perform standard field sobriety tests. Officer Eggman testified that Bailey used his vehicle to steady himself. Officer Eggman stated, "[W]hen I told Mr. Bailey to go ahead and sit down on the back of the vehicle he almost sat off of the side. I had to literally grab him and put him on the bumper to make sure he didn't fall over." Officer Eggman had Bailey perform a sobriety test called the nine-step walk and turn. Bailey did not perform the test as instructed and lost his balance twice. Officer Eggman also asked Bailey to perform a test called the one-legged stand. According to Officer Eggman, "Mr. Bailey said that he would not be able to complete this task given the fact that he was having trouble balancing himself." As alternatives, Officer Eggman had Bailey perform a finger-dexterity test and the Romberg test. Bailey was unable to complete either test as instructed. Officer Eggman said Bailey admitted that he had been drinking that night. Officer Eggman concluded that Bailey was intoxicated.

On cross-examination, Officer Eggman said he was unsure whether he was parked or driving when he first noticed Bailey's vehicle. He did not use radar to determine how fast Bailey was traveling. Officer Eggman stated that Bailey's front, right tire went off the roadway three times. He said Bailey's front tire again went off the roadway when he made the abrupt left-hand turn. Officer Eggman was unsure if he asked Bailey whether he had any medical conditions. Officer Eggman did not mention the finger-dexterity test or the Romberg test in the charging documents because they are not recommended tests of the National Highway and Safety Administration.

Kevin Holman testified that he was with Bailey on the night of his arrest. At around 7:30 p.m., he went to Bailey's home. They talked for about ten minutes before going to a restaurant to meet a friend, Jerry McKinney, who was visiting from out-of-town. Holman did not see Bailey consume alcohol before they left. Bailey drove to the restaurant, and Holman rode as a passenger. Holman testified that they met with McKinney at the restaurant for about ten minutes and that he did not observe Bailey drink any alcohol. McKinney wanted to go to Nashville that night to visit a particular downtown bar. They left the

restaurant, and McKinney drove to Nashville with Holman and Bailey riding as passengers. Bailey's vehicle remained at the restaurant.

Holman testified that they arrived at the Nashville bar at around 8:45 p.m. They stayed at the bar for about two hours, and Bailey drank one beer. Next, they spent an hour at a nearby bar where Bailey consumed another beer. After midnight, they left Nashville and returned to the restaurant. Holman said Bailey did not drink alcohol on the way back to the restaurant. They conversed in the restaurant parking lot for about thirty minutes before parting ways with McKinney. Bailey began to drive home with Holman riding as a passenger. Holman described Bailey's condition as exhausted, but not impaired. He denied that Bailey drove erratically or drove too fast. Holman said Bailey did not have trouble getting out of the vehicle or walking. He explained that Bailey has a "balance problem." Holman testified that Bailey had two beers that night and was not intoxicated.

The State began its cross-examination of Holman with the following line of questioning:

STATE: Does Mr. Bailey have a problem with alcohol?

HOLMAN: No, ma'am.

STATE: Has alcohol ever gotten him in trouble before?

HOLMAN: Not while I was around.

STATE: Not when you were around?

HOLMAN: No, ma'am.

STATE: But you've know [sic] him for how many years?

HOLMAN: Well, since I was probably 15, 14.

STATE: So you've known him for a while?

HOLMAN: Yes, ma'am.

STATE: Would you say you were close friends?

HOLMAN: Yes, ma'am.

STATE:      And you're telling me right now that you have no recollection of alcohol having gotten him into trouble in the past?

HOLMAN:    No. Because when I got married – I was married for about 20 something years, I got away from Dennis. I didn't see him for years.

STATE:      Because he was a hard drinker ------

HOLMAN:    No.

STATE:      –and you weren't drinking then–

DEFENSE COUNSEL:    Your Honor I'm going to object. I don't [know] why this has any relevance as to whether or not this man knew him. We're getting into prior bad acts and I think that irrelevant.

STATE:      Well, you were the one who mentioned perjury, [Defense Counsel].

HOLMAN:    I was married – Can I finish?

STATE:      Absolutely.

HOLMAN:    I knew Dennis when I was a young man, young –

DEFENSE COUNSEL:    Your Honor, I want to make sure that your objection got heard, your ruling was you sustained my objection, is that right?

COURT: Right.

Holman estimated that it takes an hour to drive from the restaurant to downtown Nashville late at night.

Following the proof at trial, Bailey was convicted of driving under the influence, second offense. He filed a motion for new trial, arguing that the State engaged in prosecutorial misconduct by questioning Holman about Bailey's prior problems with alcohol. This motion was denied by the trial court. In its written order, the trial court found that the State's questioning did not constitute prosecutorial misconduct, and that Bailey was not

denied a fair trial. The court also stated that a limiting instruction was not given because defense counsel failed to make a contemporaneous objection at trial. Bailey filed a timely notice of appeal following the denial of his motion for new trial.

## ANALYSIS

Bailey claims he was denied a fair trial because the State committed prosecutorial misconduct in questioning Holman. The State asked Holman on two separate occasions whether alcohol had ever gotten Bailey into trouble. Bailey asserts that the State's questions were intended to illicit testimony regarding Bailey's prior conviction, which he claims was inadmissible. He contends he was prejudiced by the State's questioning because "[t]he jury was left to speculate as to the prior history of the defendant involving alcohol." In response, the State argues that Bailey waived this issue by failing to raise a contemporaneous objection. The State also claims that its questioning was not so inflammatory as to affect the verdict.

In claiming prosecutorial misconduct, Bailey is required to show that the prosecutor's conduct was so improper that it affected the jury's verdict to his detriment. State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997) (citing Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965)). This court is to consider the following factors in assessing the prosecutor's conduct:

> the intent of the prosecutor, the curative measures which were undertaken by the court, the improper conduct viewed in context and in light of the facts and circumstances of the case, the cumulative effect of the remarks with any other errors in the record, and the relative strength or weakness of the case.

Id. (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

Bailey's claim is predicated on the assertion that evidence of his first conviction for driving under the influence was inadmissible. In support of this assertion, his brief sets forth the following argument, "In these cases, to ensure a fair trial, a jury can hear no evidence of the prior offense in determination of guilt or innocence."

We must first note that Bailey did not lodge a contemporaneous objection following the prosecutor's alleged misconduct. Rule 36(a) of the Tennessee Rules of Appellate Procedure states in part, "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." See also Tenn.R.Evid. 103 (a)(1). Here, the State asked Holman on two separate occasions whether alcohol had ever gotten Bailey into trouble. Bailey did not object after the first question was asked; instead,

he allowed the State to ask seven additional questions, including the second inquiry about Bailey's past troubles with alcohol. Once the trial court sustained the objection, Bailey did not request a curative instruction. Bailey simply failed to take measures that were reasonably available to prevent the prejudicial impact of the State's questioning.

Because Bailey did not comply with Rule 36(a), we would only be permitted to review this issue for plain error. See T.R.A.P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). In State v. Adkisson, this court stated that in order for an error to be considered plain:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted). All five factors must be shown, and it is not necessary to consider every factor if it is obvious that one of the factors cannot be established. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). Here, consideration of this issue is not necessary to do substantial justice because a substantial right of the accused was not adversely affected. The State asked Holman two times whether alcohol had ever gotten Bailey into trouble. Both times, Holman responded that he was not aware of any prior misconduct. Accordingly, the State's questioning does not amount to plain error. Bailey is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-6-