# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 8, 2011 Session

## STATE OF TENNESSEE v. MALCOLM DUDLEY THOMAS

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-CR052678     Donald P. Harris, Judge**

---

**No. M2010-01394-CCA-R3-CD - Filed October 4, 2011**

---

A Williamson County Circuit Court jury convicted the appellant, Malcolm Dudley Thomas, of aggravated sexual battery, a Class B felony, and the trial court sentenced him to eight years in confinement.  On appeal, the appellant contends that (1) the trial court erred by ruling that the State's rebuttal witnesses could testify about the victim's character for truthfulness and (2) the State committed prosecutorial misconduct throughout the trial by placing or attempting to place prejudicial and irrelevant facts before the jury.  Based upon the oral arguments, the record, and the parties' briefs, we conclude that the trial court committed reversible error by allowing the State's rebuttal witnesses to testify about the victim's character for truthfulness.  Therefore, the appellant's conviction is reversed, and the case is remanded to the trial court for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed,**
**and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined.  JOSEPH M. TIPTON, P.J., concurred in results only.

Brent Horst (on appeal), Nashville, Tennessee, and Robert H. Hassell (at trial), Franklin, Tennessee, for the appellant, Malcolm Dudley Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary Katherine White and Jennifer Moore, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that in May 2007, the Williamson County Grand Jury indicted the appellant for count one, rape of a child, and counts two through four, aggravated sexual battery. The victim was his stepdaughter. According to the indictments, the offenses occurred between April 2005 and June 2006, when the victim would have been ten to twelve years old. During the April 2008 trial, the State nolle prosequied count one. The jury found the appellant not guilty of count two and guilty of counts three and four. However, the trial court granted the appellant's motion for judgment of acquittal as to count three and, acting as the thirteenth juror, sua sponte granted his motion for new trial as to count four. On appeal by the State, a panel of this court reinstated the appellant's conviction for count three and remanded the case for sentencing on that conviction. See State v. Malcolm Dudley Thomas, No. M2008-01191-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 190, at *2 (Nashville, Apr. 20, 2009). The appellant filed a motion for new trial as to count three, which was granted by the trial court pursuant to Tennessee Rules of Criminal Procedure 25(b)(2) and 33(d). The appellant was retried for counts three and four, renumbered as counts one and two, in October 2009.

Although the appellant does not contest the sufficiency of the evidence, we will summarize the evidence presented at the appellant's second trial. The then fifteen-year-old victim testified that she was born on June 28, 2004, that her parents divorced when she was about four years old, and that her mother married the appellant. The victim's parents had joint custody, and she spent time at both of their homes each week. The victim and her mother used to have a close relationship. On June 23, 2006, the victim had a party at her mother's house to celebrate her twelfth birthday. The victim said that on the Monday or Tuesday night before the party, which would have been about June 19, 2006, the appellant came into her bedroom and touched her breasts or around her vaginal area. The victim said she did not remember exactly what happened because she did not like to think about the incident and had blocked it out. She said that in a separate incident, the appellant came into her bedroom one night; grabbed her hand; made her put her hand down his pants; and put her hand on his penis, which was "kind of stiff." She said that she had been asleep, that she woke with her hand down the appellant's pants, and that the appellant "was like holding on to my hand and moving it up and down." When she realized what was happening, she pulled her hand out of the appellant's pants and told him to leave. She said that she did not remember when the second incident occurred but that it happened while her mother and the appellant lived on Bush Drive in Franklin. She said they moved into the house on Bush Drive in 2005, "towards the end of my 5th grade year." She did not tell anyone about the abuse because she was afraid no one would believe her. At some point, the victim revealed the abuse to her father and her father's neighbor. The victim's father telephoned the police, and the victim spoke with Detective Becky Johnson.

On cross-examination, the victim denied that she disliked the appellant because he had

an affair with her mother while her parents were married and because the affair resulted in her parents' divorce. She acknowledged that she liked the appellant and went various places with him. She said she did not remember laughing, yawning, playing with her cellular telephone, or texting during her interviews with Detective Johnson.

The victim's father testified that on the night of June 29, 2006, the victim was at his home and became verbally aggressive and angry, which was unusual. He finally calmed her down, and she told him that she needed to tell him something. The victim never told her father what was bothering her but wrote him a note. Based on what was in the note, the victim's father asked that his neighbor, a Deputy United States Marshal, talk with her. The neighbor spoke with the victim, and the victim's father telephoned the police the next morning. The victim's father said he had a "cordial" relationship with the appellant and had no animosity toward the appellant before June 29, 2006. He and the victim's mother had been divorced for eight or nine years when the victim revealed the abuse.

On cross-examination, the victim's father testified that the victim knew the appellant was the reason he and the victim's mother divorced. He said he did not remember asking the appellant's ex-wife during the divorce if the appellant was going to molest the victim. After the divorce, the victim's father declared personal bankruptcy. He denied being angry about having to declare bankruptcy.

Detective Becky Johnson of the Franklin Police Department testified that she interviewed the victim about the abuse on July 3, 13, and 19, 2006. Detective Johnson said the victim "gestured with an indication of putting his hand over her hand and putting it on his penis." She said that on July 7, 2006, the victim attempted a "controlled" telephone call to the appellant in which the victim tried to get the appellant to admit doing something to the victim. However, the appellant did not admit anything. The victim also talked with her mother during the call. After the telephone call, Detective Johnson sent a police car to pick up the victim's mother and transport her to the police department. When the victim's mother arrived at the police department, she was very irate and confrontational and did not want to speak with the detective.

On cross-examination, Detective Johnson acknowledged that the victim laughed, giggled, and stretched during her interviews but said that the victim's actions were "indicators of stressors." She acknowledged that she did not attempt to obtain DNA evidence from the victim's bedroom and did not obtain a search warrant for the appellant's home or computer.

On redirect examination, Detective Johnson testified that she did not think she could have obtained a search warrant. She never spoke with the appellant because the appellant

said he had an attorney.

Daniel Shelton testified that he was a Deputy United States Marshal and lived next door to the victim's father. Two to three years before trial, the victim's father asked Shelton to talk with the victim. Shelton went to the victim's father's house and saw that the victim was crying and very upset. Shelton spoke with her and, based upon their conversation, advised the victim's father to contact the Franklin Police Department. He said that he had never heard the victim's father make hateful or disparaging remarks about the victim's mother. On cross-examination, Shelton testified that he and the victim's father were "good acquaintances."

Gail Hayes testified that she was a therapist and worked mostly with adolescents. In August 2006, she began counseling the victim. For the first one or two years, they met weekly. Hayes also facilitated meetings between the victim and the victim's mother. At the time of trial, Hayes was still counseling the victim, and they met every week or biweekly.

The State rested its case-in-chief and nolle prosequied count one, aggravated sexual battery for the appellant's having had unlawful sexual contact with the victim on June 19, 2006. The trial court denied the appellant's motion for judgment of acquittal on count two, aggravated sexual battery for the appellant's having forced the victim to put her hand on his penis.

The appellant testified that the victim's allegations were "outrageous" and "pathetic," that he had never touched a child inappropriately, and that the victim had never touched him sexually. He said that he had loved the victim and had treated her as one of his natural children. He said that he and the victim had a good relationship and that he was "dumbfounded" by the allegations. The appellant traveled extensively for his employer. He said that as a result of his travel and the victim's staying at her father's home part of the time, he sometimes saw the victim for only one or two days during a month. The defense introduced into evidence a calendar, showing the nights between April 2005 and June 2006 when the appellant and the victim would have been at the Bush Drive residence at the same time. In July or August 2006, the appellant spoke with Detective Johnson on the telephone and agreed to meet with her.

On cross-examination, the appellant acknowledged that the victim testified truthfully when she said that she and her mother used to have a close relationship, that she and the appellant went places together, and that they were both home on the night of June 19, 2006. He said he never met with Detective Johnson because they could not arrange a convenient time. He acknowledged that he told Detective Johnson he had an attorney and that he never contacted Detective Johnson or anyone in the district attorney's office to set up a meeting

with her. He also acknowledged that his calendar showed he was at home with the victim for one hundred sixteen nights between April 2005 and June 2006.

Christine Karl testified on rebuttal for the State that she and the victim's father had been "backdoor" neighbors for six and one-half years; that the victim was a friend of her daughter; and that she had watched the victim grow up. She said that she never saw the victim's father express anger or bitterness toward the victim's mother and that the victim was truthful.

Kim Brown testified on rebuttal for the State that she and the victim's mother were sisters, that she was in the delivery room when the victim was born, and that the victim's allegations had torn their family apart. She said that she had never known the victim's father to show bitterness or resentment toward the victim's mother and that the victim was truthful.

The jury convicted the appellant of count two. After a sentencing hearing, the trial court sentenced him to eight years in confinement.

## II. Analysis

### A. Character for Truthfulness

The appellant claims that the trial court erred by ruling that the State's rebuttal witnesses could testify about the victim's character for truthfulness when the defense never attacked the victim's general character for truthfulness. The State argues that the appellant has waived the issue and that, in any event, the trial court properly allowed the rebuttal witnesses to testify because the defense attacked the victim's character for truthfulness. We conclude that the trial court erred and reverse the appellant's conviction.

Initially, we will address the State's waiver argument. After the defense rested its case-in-chief, the State announced that it had two rebuttal witnesses. Defense counsel objected and said, "I think these are two witnesses that are going to come in and say [the victim] is a truthful person."[1] The following exchanged occurred:

> THE COURT: Certainly when Mr. Thomas said that
> what she said wasn't true, he put her credibility [at] issue.

---

[1] The same rebuttal witnesses had testified at the appellant's first trial that the victim was a truthful person. See Malcolm Dudley Thomas, No. M2008-01191-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 190, at *12.

[Defense counsel]: Well, I think that -- there's no question about that.

THE COURT: So then I think she can try to show up her credibility in this fashion. Is that what you're going to do?

[The State]: Yes, Your Honor.

THE COURT: Okay, that's it.

[Defense counsel]: But that needs to be all that it's about. We don't need to be getting in to all this other stuff. I'm going to object to that.

THE COURT: Well, I hope that they would do that outside the presence of the jury.

. . . .

[Defense counsel]: No, I'm talking about his wife and all that sort of deal is what I'm going to object to.

THE COURT: Okay. Ready for the jury?

The State argues that the appellant has waived the issue because "[a]lthough it first appears that the defense counsel is objecting to potential opinion testimony, he later clarifies that he is objecting to 'all this other stuff.'"

Obviously, the better practice would have been for defense counsel to have stated that he was objecting to the rebuttal witnesses' testimony pursuant to Tennessee Rule of Evidence 608(a). Nevertheless, counsel's stating that "I think these are two witnesses that are going to come in and say [the victim] is a truthful person" sufficiently informed the trial court that he was objecting to their testimony under Rule 608(a). Moreover, the trial court ruled that the defense had put the victim's credibility at issue and said, "Okay, that's it." The appellant did not waive the issue by failing to argue with the trial court.

The State called Christine Karl and Kim Brown to testify in its rebuttal case. The State asked Karl if the victim was truthful, and she said, "Absolutely." Karl also stated, "She's just a good kid. You know good character, very active in church, and she's just a good kid; very honest." Brown testified, "I know [the victim] to be a truthful child."

-6-

Generally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). However, Tennessee Rule of Evidence 608(a) provides an exception to the general rule, stating,

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) the evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.

In determining whether a witness's character for truthfulness has been attacked,

> [t]he critical question is whether the proof is suggesting that the witness has an untruthful character. . . . Contradiction proof can simply be used to establish that the witness, though a truthful person, is forgetful. Similarly, a prior inconsistent statement or a vigorous cross-examination does not always suggest the witness has an untruthful character, but the facts of each case must be examined carefully.

Neil P. Cohen, Tennessee Law of Evidence § 6.08[12][b] (5th ed. 2005) (footnotes omitted). This court will not conclude the trial court's ruling was error absent an abuse of discretion. State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996).

In support of his claim that he did not attack the victim's character for truthfulness, the appellant cites State v. Steven Lee Whitehead, No. W2000-01062-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 732, at **57-58 (Jackson, Sept. 7, 2001), in which a panel of this court stated as follows:

> [T]he United States Court of Appeals for the Ninth Circuit, in interpreting the essentially identical federal counterpart to Tenn. R. Evid. 608(a), carefully distinguished between attacks by the State upon a witness' credibility in the current case and attacks by the State upon the witness' prior history or general character for truthfulness, stating that only the latter triggers rehabilitation under Rule 608(a). Accordingly, the State's introduction of testimony by other witnesses contradicting the appellant's version of the facts generally does not trigger rehabilitation

under Rule 608(a). One commentator explained, "Contradiction evidence might be offered to prove the witness has intentionally lied, but for reasons that are case-specific and have nothing to do with general trustworthiness."

(Citations omitted.)

The State argues that the defense attacked the victim's general character for truthfulness twice. The State claims that the first attack occurred during the following exchange between defense counsel and the victim:

Q. Okay. Yesterday, [victim], you said something that you have never said before. Do you recall that, you know what that was?

A. No.

Q. You said yesterday that you touched Dudley and he moved your hand up and down on his penis, that's what you said.

A. Okay.

Q. Do you remember saying that?

A. Yes.

Q. You've never said that before, ever, have you?

A. Yes.

Q. When?

A. I don't know. I just know I've said that before because it's the truth.

Q. You've always said that you were asleep, [victim], haven't you?

A. When I woke up and realized what was happening, I

-8-

pulled my hand away.

. . . .

Q. Well, was Mr. Thomas out of town when it happened? Were you dreaming, [victim]?

A. No.

The State contends that the second attack on the victim's credibility occurred during the following exchange between defense counsel and Detective Johnson:

Q. During her interview she's flipping her cell phone, texting on her cell phone?

A. She did have her cell phone with her, yes.

Q. Laughing and giggling and stretching and yawning and all of that?

A. All indicators of stressors.

Q. Also indicators of being untruthful also?

A. I don't agree with you, no, sir.

We conclude that in the two preceding exchanges, the defense was challenging the victim's credibility as it pertained to this case and was not attacking the victim's general character for truthfulness. As the Eleventh Circuit explained, "An 'attack' [on credibility] that consists only of 'Government counsel pointing out inconsistencies in testimony and arguing that the accused's testimony is not credible does not constitute an attack on the accused's reputation for truthfulness within the meaning of [Federal] Rule 608.'" United States v. Drury, 396 F.3d 1303, 1315 (11th Cir. 2005) (quoting United States v. Danehy, 680 F.2d 1311, 1314 (11th Cir. 1982)). Moreover, we have read the trial transcripts carefully and can find no instance where the appellant attacked the victim's general character for truthfulness. Therefore, the trial court abused its discretion by ruling the rebuttal witnesses could testify about the victim's character for truthfulness.

Next, we must determine whether the trial court's error was harmless. The only evidence against the appellant came from the victim, who testified that she woke up with her

hand down the appellant's pants and on his penis. She could not remember when the incident occurred, stating only that it happened while the family lived on Bush Street, which the family moved onto toward the end of her fifth-grade school-year. The State's case turned primarily on the jury's assessment of the victim's credibility. Therefore, we conclude that the trial court's error was not harmless. See Tenn. R. App. P. 36(b); State v. Mallard, 40 S.W.3d 473, 489 (Tenn. 2001) (stating, "When looking to the effect of an error on the trial, we will evaluate that error in light of all the other proof introduced at trial."). Accordingly, the appellant's conviction is reversed, and the case is remanded to the trial court for a new trial.

## B. Prosecutorial Misconduct

The appellant contends that the prosecutor committed misconduct by eliciting irrelevant and prejudicial allegations against the victim's mother, asking the victim to comment on her own credibility, eliciting testimony about the victim's receiving counseling, and asking the victim about family members in the trial audience. The appellant argues that the prosecutor's actions were intended to evoke sympathy for the victim and bolster her credibility and denied him the right to a fair trial. The State argues that the prosecutor's actions were not improper. Although we have determined that the appellant's conviction must be reversed and the case remanded for a new trial, we will address this issue to facilitate further appellate review. We conclude that the appellant is not entitled to relief on this issue.

In order to prevail on a claim of prosecutorial misconduct, the appellant must demonstrate that the conduct committed by the prosecution was so inflammatory or improper that it affected the verdict to his detriment. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965); State v. Gray, 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997). In making this determination, this court is guided by five factors:

> 1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
>
> 2. The curative measures undertaken by the court and the prosecution.
>
> 3. The intent of the prosecutor in making the improper statement.
>
> 4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).

First, the appellant argues that the State elicited irrelevant and prejudicial testimony about the victim's mother. During the victim's testimony, the State asked about her current relationship with her mother. The victim testified that her mother did not believe her allegations, that she and her mother were not as close as they used to be, and that her mother had abandoned her. The appellant also cites to the following exchange between the State and Detective Johnson:

> A. . . . . I've had other non-offending parents that were not protective, however, not to this extent.
>
> Q.  Did she seem concerned about her child?
>
> [Defense counsel]: Object to speculation.
>
> THE COURT: Sustain the objection.
>
> Q. . . . .  Did she ever ask you whether [the victim] was okay?
>
> [Defense counsel]: Asking the indirect hearsay, Your Honor, that's improper.
>
> [The State]: It goes to state of mind of the declarant.
>
> THE COURT: Sustain the objection.
>
> Q. . . . .  Based on your observations of [the victim's mother], did she seem to even entertain the possibility that her child was telling the truth?
>
> THE COURT: Sustain. [The victim's mother] is not on trial here.  However she felt about this is not relevant to this case.
>
> [The State]: Your Honor, I would submit that it is relevant --

THE COURT: I mean you're trying to use her attitude against Mr. Thomas and that's unfair and I've ruled.

Regarding the victim's testimony about her mother, the appellant did not object. See Tenn. R. App. p. 36(a). As to the State's questioning of Detective Johnson, the appellant repeatedly objected to the State's questions, and the trial court sustained the objections. The trial court finally informed the State that its questions were irrelevant, and the State moved on to another line of questioning. Nothing indicates that the State's questions had any effect on the trial.

Next, the appellant claims that the prosecutor committed misconduct by asking the victim if she had been truthful and why the jury should believe her. The appellant objected, saying, "That's up to the jury." However, the trial court overruled the objection. The victim testified that she was telling the truth and that she had no reason to lie. The State's questions were not improper. Moreover, the appellant cross-examined the victim extensively about her allegations, inconsistencies in her story, and her possible bias against him. He is not entitled to relief.

The appellant also contends that the prosecutor elicited irrelevant and prejudicial testimony about the victim's seeing a counselor and improperly referred to the counseling during its closing argument. Although the victim and Gail Hayes testified briefly that the victim was receiving counseling, the appellant did not object to their testimony. The appellant also failed to object to the State's closing argument. By failing to object, the appellant has waived the issue. See Tenn. R. App. P. 36(a).

Finally, the appellant contends that the State committed misconduct when it asked the victim about family members in the audience at trial. On redirect examination, the State asked the victim, "[Victim], do you know some of these people that are sitting in the courtroom?" The victim said that her maternal grandmother and her aunt were in the audience. The State asked, "How long has it been since you've seen your grandmother on your mother's side?" The defense objected, and the trial court sustained the objection. Given that the trial court sustained the objection, preventing the victim from answering the question, we fail to see how the appellant was prejudiced by the prosecutor's question.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we conclude that the trial court committed reversible error by ruling that the State's rebuttal witnesses could testify about the victim's character for truthfulness. Therefore, the appellant's conviction is reversed, and the case is remanded to the trial court for a new trial.

_____
NORMA McGEE OGLE, JUDGE